# TOONE v. J. P. O'NEILL CONSTRUCTION COMPANY.

No. 2265.   Decided January 16, 1912 (121 Pac. 10).

1. EVIDENCE—ADMISSIONS—PLEADINGS.  An answer or other pleading which has not been superseded by amendment or substitution cannot be used as evidence for the jury by way of admissions without consent of the parties; the effect and meaning of the pleading with respect to admissions being a question for the court.[1]   (Page 275.)

2. EVIDENCE—ADMISSIONS—PLEADINGS.  Where an amended or substituted pleading is put in evidence as an admission, the party against whom it is used may explain the admissions under oath, and the jury must consider both the admissions and explanation in determining the question involved.   (Page 277.)

3. PLEADING—GENERAL DENIAL.  A denial of the "material allegations" of a complaint is sufficient as a general denial.   (Page 278.)

4. APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE.  Error in an employee's action for personal injuries while blasting in admitting a paragraph of the answer in evidence as an admission that the place where plaintiff was was dangerous, when the answer had not been superseded as a pleading, was harmless to defendant, where the evidence conclusively showed that the place in which plaintiff was was dangerous.   (Page 279.)

5. MASTER AND SERVANT—INJURIES—SUFFICIENCY OF EVIDENCE.  Evidence in an employee's action for personal injuries while blasting rock *held* to show that the place at which plaintiff and his foreman stood when setting off the blast was dangerous by reason of flying rock.   (Page 279.)

6. MASTER AND SERVANT—INJURIES—NEGLIGENCE.  A quarry owner was negligent where it required its employees in setting off blasts to stand so close to the rock as to be struck by flying fragments when they could have discharged the blast from a place of safety had a longer electric wire been furnished for exploding blasts.   (Page 281.)

---

[1] Dry Goods Co. v. Box, 13 Utah, 494, 45 Pac. 629.

7. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—ACTING UNDER ORDERS. A servant injured while working pursuant to orders of his master is not negligent in so doing, unless the danger from the work was so obvious ʿand imminent that a reasonably prudent person with the knowledge of his danger would not have undertaken it.[2] (Page 282.)

8. MASTER AND SERVANT—INJURIES—JURY QUESTION—CONTRIBUTORY NEGLIGENCE. In an employee's action for injuries while blasting rock, whether the danger from being struck by flying rock at the place where plaintiff set off the charge pursuant to his foreman's orders was so obvious as not to justify him in following his foreman's orders *held* a jury question.[3] (Page 283.)

9. MASTER AND SERVANT—INJURIES—JURY QUESTION—ASSUMPTION OF RISK. Whether an employee injured while firing off a blast by flying fragments of rock assumed the risk of injury by remaining at the battery and assisting in firing the blast *held* a jury question. (Page 284.)

10. MASTER AND SERVANT—ASSUMPTION OF RISK—ORDINARY DANGERS. An employee engaged in blasting rock assumed the usual dangers incident thereto, and also the risk of injury from any extraordinary dangers of which he knew or which were obvious. (Page 284.)

11. TRIAL—INSTRUCTIONS—THEORY OF PARTIES. While a party is entitled to have his case submitted on the theory of his own evidence as well as upon the theory of the whole case, and the court could charge in separate instructions plaintiff's and defendant's theories under the evidence, it was not bound to do so, but could cover the question in a single instruction. (Page 285.)

12. APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTIONS. In an employee's action for personal injuries by flying rock from a blast set off by him, plaintiff's theory was that he remained at the place where the blast was set off by reason of his foreman's assurance that it was not too close to be dangerous, made when plaintiff was about to send another employee to get a longer wire to set off the blast, while defendant's theory was that no such assurance was given. The court gave defendant's requested instruction, as modified by inserting the quoted part, that if the jury find that plaintiff upon his own

[2] Fowler v. Union Portland Cement Co., 39 Utah, 363, 117 Pac. 462.

[3] Faulkner v. Mammoth M. Co., 23 Utah, 441, 66 Pac. 799; Christienson v. R. G. W. Ry., 27 Utah, 132, 74 Pac. 876, 101 Am. St. Rep. 945.

judgment, "uninfluenced by any assurance of safety on the part of defendant's foreman" as to whether the place he was standing when he fired the shot was safe, or that plaintiff selected it, but fired the shot without directions of the foreman, defendant would not be liable. *Held*, that defendant was not prejudiced by the modification; defendant's theory of the evidence having been sufficiently covered by the instructions. (Page 285.)

13. MASTER AND SERVANT—INJURIES—NEGLIGENCE OF FOREMAN. Even though a quarrying company selected a competent foreman, and the foreman used his best judgment in selecting a location for firing off blasts, the company would still be liable for injuries resulting therefrom if the foreman did not use ordinary care and prudence in selecting a location from which employees should fire the blasts. (Page 285.)

APPEAL from District Court, Second District; *Hon. J. A. Howell*, Judge.

Action by Charles S. Toone against the J. P. O'Neill Construction Company.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*C. S. Varian* and *Valentine Gideon* for appellant.

*Evans & Evans* and *Powers & Marioneaux* for respondent.

APPELLANT'S POINTS.

By statute the defendant in an action is permitted to set forth by answer as many defenses and counterclaims, legal or equitable, or both, as he may have. (Compiled Laws Utah, 1907, sec. 2972.) And also by statute, allegation of new matter in the answer to which a reply is not required is deemed controverted by the adverse party. (*Id.*, sec. 2996.)

Assuming that the defenses are utterly inconsistent, the rule is established by an overwhelming weight of judicial authority, that, unless expressly prohibited by the statute,

they may still be united in one answer. It follows that the defendant cannot be compelled to elect between such defenses, nor can evidence in favor of either be excluded at the trial on the ground of the inconsistency. (Pomeroy, Remedies & Remedial Rights [2 Ed.], sec. 722; *Miles v. Woodward,* 115 Cal. 308; 46 Pac. 1076; *Lakeshore, etc. Ry. Co. v. Warren,* 3 Wyo. 134, 6 Pac. 724; *Ray v. Moore,* 24 Ind. App. 480-490, 56 N. E. 937-940; *Kimball v. McIntyre,* 3 Utah, 77-80; *Murphy v. Carter,* 1 Utah, 17.)

When a denial is pleaded in connection with a defense of new matter, or two defenses of new matter are set up, the admissions in the one can never be used to destroy the effect of the other. The concessions of a defense by way of confession and avoidance do not obviate the necessity of proving the averments contradicted by the denial. This rule is universal even in those states where inconsistent defenses are not permitted to stand. The remedy is by striking out, or by compelling an election, and not by using the admissions of one to destroy the issues raised by the other. (Pomeroy Remedies & Remedial Rights, sec. 724; *Hynes v. Packard,* 92 Tex. 44, 45 S. W. 567; *Light v. Stevens,* 103 Pac. (Cal.) 361; *Buhne v. Corbett,* 43 Cal. 264; *Billings v. Drew,* 52 Cal. 565; *Siter v. Jewett,* 33 Cal. 92; *McDonald v. S. C. Co.,* 101 Cal. 206, 35 Pac. 643; *Banta v. Siller,* 121 Cal. 414, 53 Pac. 935; *Quigley v. Merritt,* 11 Iowa, 147; *Shannon v. Pearson,* 10 Iowa, 588.)

The test by which the negligence of the master is to be determined, is that of ordinary and reasonable care; that is to say, such care as would be exercised by an ordinarily prudent and reasonable person under similar conditions and circumstances. Ordinarily this matter is to be determined by the jury sitting in judgment upon the act or omission, but, it is manifest, that there are cases which may and do arise in the diversified avocations of industrial and community life, where the doing or omitting to do any particular act must be committed to the experience and judgment of persons qualified. This principle is generally acknowledged in cases where the acts of medical men and surgeons

are in question, and also in maritime cases where the judgment of the proper officers in charge of a vessel in a perilous situation, or one particularly demanding the knowledge, skill and experience of seamen, is held to be conclusive. (*Lawrence v. Minturn,* 17 Howard, 105, 110; *City of Boston,* 159 Fed. 261-266; *Staloch v. Holm,* 100 Minn. 276, 111 N. W. 264-266 (case of physician); *O'Neill v. Railroad,* 66 Neb. 638, 92 N. W. 731 (case of unblocked frog); *Memphis P. Co. v. Briton,* 25 Ohio C. C. 153; *Piehl v. Railroad,* 46 N. Y. S. 257, 19 N. Y. App. Div. 471.) When a servant enters upon or continues in a service with full knowledge that it is dangerous and is fully aware of the extent of the danger to which he is exposed, there is an implied contract of assumed risk, by which, on the principle of the maxim, *Volenti nonfit injuria,* the servant waives his right to recover for injuries received by him in such service. (*Faulkner v. Mammoth Mining Co.,* 23 Utah, 437-441, 66 Pac. 799; *Brotzky v. Wisconsin Granite Co.,* 125 N. W. (Wis.) 916; *Christiansen v. R. G. W. Ry.,* 27 Utah, 132, 74 Pac. 876, 101 Am. St. Rep. 945.) And an assurance of safety, if given, cannot prevent the operation of a defense which is completely made out when it is proved that the risk was known to and comprehended by the servant. (1 Labatt Master & Servant, sec. 452.)

### RESPONDENT'S POINTS.

The defendant's answer, denying merely "every material allegation of the complaint," raised no issue whatever. (*Dodge v. Chandler,* 13 Minn. 118; *Montom v. Purdy,* 11 Minn. 278; *Pry v. Hannibal & St. Joseph Railroad,* 73 Mo. 127; *Edmondson v. Phillips,* 73 Mo. 57.) It was proper to show that defendant had in its answer, notwithstanding its general denial, conceded that the place was dangerous. (*Bierer v. Fretz,* 32 Kan. 329, 4 Pac. 284; *Derby v. Gallup,* 5 Minn. 119, 120; *Cook v. Finch,* 19 Minn. 407-411; *Conway v. Wharton,* 13 Minn. 158; *Jones v. Mutual Accident Assn.,* 92 Iowa, 652, 61 N. W. 485; *Graten v. Life Ins. Co.,* 92 N. Y. 274, 44 Am. Rep. 372; *Boots et al. v. Canine,* 94

Ind. 408; *Buller, Nisi Prius,* 237.) Whatever is admitted in a special defense operates, so far, as a modification of a general denial, and is to be taken as true, without other proof. (*Wiley v. Keokuk,* 6 Kan. 94; *Butler v. Kaulback,* 8 Kan. 668; *Sexton, Trustee, etc. v. Rhames,* 13 Wis. 111; *Hartwell v. Page et al.,* 14 Wis. 53.)

Any fact sustaining the plaintiff's case, expressly admitted in one part of the answer, is to be taken as true for all purposes in the case and the plaintiff is relieved from the necessity of proving it. (*Miller v. Larson,* 17 Wis. 644; *Farrell v. Hennesy,* 21 Wis. 639; *Alderman v. French,* 1 Pick. 1.)

It was the foreman's assurance of safety that induced the plaintiff to remain where he was. The test under such circumstances is whether the servant acted as an ordinarily prudent man would have acted under the same circumstances. If he did, he was not guilty of negligence. The foreman's assurance of safety was made doubly convincing by the fact that he remained in the same place himself. This was surely enough to lull to security the mind of any man who thought the foreman competent and experienced. (*Thompson v. Chicago M. & St. Paul Railway Co.,* 14 Fed. 564; *English v. Chicago M. & St. Paul Railway Co.,* 24 Fed. 906; *East Tennessee E. & W. Railway Co. v. Bridges,* 92 Ga. 339, 17 S. E. 645; *Cincinnati H. & I. R. R. Co. v. Madden,* 134 Ind. 462; *Frandsen v. Chicago Rock Island & Pac. Railroad Co.,* 36 Iowa, 372; *Grant v. Minneapolis Railway Co.,* 31 Minn. 248, 17 N. W. 378; *Stephens v. St. Joe Railroad Co.,* 96 Mo. 207, 9 S. W. 589; *Ballard v. Chicago, Rock Island & Pac.,* 51 Mo. App. 453; *Munyon v. Kansas City, etc. Co.,* 58 Mo. App. 68; *Faulkner v. Mammoth Mng. Co.,* 23 Utah, 437, 66 Pac. 799; *Mangum v. Mining Co.,* 15 Utah, 534, 50 Pac. 834; *Miller v. Mining Co.,* 18 Utah, 358, 55 Pac. 58; *Pool v. Railroad Co.,* 20 Utah, 216, 58 Pac. 326.)

To make a man feel secure in a place you know to be dangerous ,when otherwise he would fly from it, is to wrong him. This is the real ground of our complaint. (*Tuckett*

*v. Am. Steam and Hand Laundry,* 30 Utah, 273, 84 Pac.
507, 4 L. R. A. (N. S.) 990, 116 Am. St. Rep. 832; *Fowler
v. U. P. C. Co.,* 39 Utah, 363, 117 Pac. 462; *Chicago A.
Pressed Brick Co. v. Sobkawiak,* 148 Ill. 573, 36 N. E. 572;
*Fox v. Hannibal & St. Joe R. R. Co.,* 96 Mo. 207.)

FRICK, C. J.

This is an appeal from a judgment awarding damages
for personal injuries sustained while respondent was the
employee of appellant.

The material and controlling facts on behalf of respond-
ent, in substance, are as follows: At the time of the in-
juries complained of, and for a long time prior thereto, ap-
pellant was engaged in operating a stone quarry in Morgan
County, Utah. It employed a considerable number of men
to carry on the business, of which respondent was one, and
he had been in its employ for four or five months imme-
diately preceding the accident. About two months of that
time he was employed in drilling the blast holes into the
face of the ledge of rock, and the rest of the time immediately
preceding the accident he was what in the record is termed
a "powder man." As powder man it was his duty to re-
ceive the powder at the quarry that was intended to be used
for blasting purposes, see that it was safely stored in the
powder house, and when it was needed for blasting, which
occurred almost daily, he was required to take the powder
from the powder house and deliver it at the holes that had
been drilled into the face of the ledge. The powder was
received and handled in cans, or what the witnesses term
"kegs," containing twenty-five pounds each. It was also the
duty of respondent to assist a Mr. Buck, who was the fore-
man at the quarry, to put the powder into the holes that had
been drilled for the purpose of blasting. The foreman al-
ways indicated where the holes should be drilled, and they
were usually drilled into the face of the ledge from twelve
to sixteen feet in depth, and from two and one-half to three
inches in diameter. Respondent, in substance, testified that
on July 5, 1906, a certain hole had been drilled into the

face of the ledge of rock about twelve feet deep and about two and one-half inches in diameter; that he got the powder at the powder house to charge the hole, and that he, together with the quarry foreman and one Randall, placed the powder into the hole in the usual manner by pouring the powder in first, and then placing earth on top of the powder and tamping it down; that there were four or five kegs of powder put into the hole in question, and in loading it, and, before the earth was put in, a cap was placed on the powder. To this cap a wire was attached, which came to the surface or collar of the hole, and to which another wire was subsequently attached which led to an electric battery, by means of which the powder was ignited which caused it to explode, and by the force of the explosion a large quantity of rock would usually be loosened and some of them thrown out from the face of the ledge. When the hole was charged as aforesaid, the foreman attached the battery wire to the one which was placed into the hole, and which was attached to the cap. The battery wire was about 100 feet in length. The foreman would always indicate where the battery should be placed when a shot was to be fired. On the occasion in question the foreman in directing respondent where to take the battery said "take the wire down the dugway." Respondent then suggested to the foreman, "Don't you think we had better go the other way?" to which the foreman replied, "No; take it down the dugway." This dugway was a wagon road that had been prepared for the teamsters to enable them to drive their teams to the face of the ledge, and there load the rock that had been blasted out. The dugway led directly south from the hole in question, and by going "the other way," as suggested by respondent, he wanted to go west, which would place him on an angle, instead of directly in front of the hole. Respondent, however, followed the foreman's directions, and "strung" the wire "down the dugway." When he had gone as far as the wire reached, namely about 100 feet from the hole, he spoke to Randall, who was with him, saying: "This wire ain't long enough. We had better get some more wire so it will reach farther down, connect

this wire on, and run it to the blacksmith shop." The blacksmith shop referred to was farther on down the slope of the hill, and farther away from the ledge where the hole in question was drilled. When respondent told Randall to get more wire, Randall started down the hill to go to the place where more wire was kept to get some. In the meantime the foreman had rached the point where respondent was with the battery, and asked respondent where Randall was going. Respondent replied: "He is going after some more wire," and the foreman said, "I think we have got enough wire here. I think this will be all right. We will be safe here." Respondent further testified: "Then he (the foreman) came and talked to me a minute, and I thought I would not be safe, and he convinced me I would be safe." The foreman then called to Randall (who in the meantime had continued on down the hill for more wire), "Never mind the wire. The wire is long enough now." Randall then came back without any wire. Respondent also testified that, before Randall was called back, he, respondent, again spoke to the foreman as follows: "Buck, do you think we will be safe here?" and that the foreman said, "Yes; I think we are safe. Yes; I think we will be safe enough here;" and that "he convinced me I was safe. If he hadn't, I would have gone further." Respondent also testified that he wanted more wire to get farther away from the explosion, but, as Buck was an experienced blaster, "I believed him" when he said they had reached a point of safety. Mr. Randall in the meantime had gone, leaving the foreman and respondent at the battery. The foreman, with the assistance of respondent, operated the battery and discharged the blast. Respondent when on the witness stand was asked the following questions, which he answered as indicated: "Q. Did you hear the explosion? A. Why, yes; I guess I did hear it. Q. When the explosion happened, what did you do? A. I didn't do nothing only stand there and dodge the rock. Q. You saw the rocks flying? A. Yes, sir; I saw the rocks flying. Q. State whether there were many or few of them flying? A. Quite a few, it seemed to me,

40 Utah—18

the way I was dodging them. Q. You dodged them? A. Yes; as much as I could. Q. And finally you were struck? A. Finally, I was struck. Q. Do you know what happened next after you were struck? A. No, sir." Mr. Randall in his testimony corroborated respondent's statements. Another witness also testified that the distance from the hole to the point where the battery was placed and where respondent and the foreman stood when the explosion occurred was about 100 feet. The foreman, who was the only other person present with respondent and Randall, in testifying for appellant denied the statements attributed to him. He also testified that the wire was 250 feet long, and that it was the same wire that had been used all of the time in discharging blasts with the battery. He admitted that respondent was struck with a flying piece of rock from the explosion, and that he caught him in his arms when struck and when in the act of falling. Another witness called by appellant testified that the distance from the hole to the battery was about 250 feet. Counsel for appellant, on cross-examination of respondent, also endeavored to have him admit that he relied on his own judgment with respect to whether he was in a safe place by remaining at the point where the battery as placed and operated in discharging the blast in question. Counsel now contends that from such cross-examination it is made evident that respondent relied upon his own judgment, and not upon that of the foreman in remaining with the battery. We have carefully gone over the entire cross-examination of respondent as the same appears in the original bill of exceptions, and, while he made some admissions or statements which apparently sustain counsel's claim, yet, when all of respondent's statements and admissions are considered together, he did not materially vary from the statements that he made on his examination in chief to which we have called attention. It would subserve no good purpose in this case to set forth the evidence adduced by appellant. It must suffice to say that the statements of the witnesses who testified for the respective parties were upon some points conflicting, and that, in view of

the whole testimony, the jury were justified in believing respondent and his witnesses with respect to the distance that the battery was placed from the hole in question and what took place or what was said and done immediately before the explosion occurred.

One of the principal errors relied on by appellant arose as follows: After both parties had rested, appellant's counsel moved the court to direct the jury to return a verdict in favor of appellant "on the ground that the evidence is insufficient to justify a verdict for the plaintiff." Counsel added the particular reasons for which he claimed the evidence to be insufficient. After this motion was argued, the trial court seemed to be of the opinion that the evidence was insufficient to show that the place from which the battery was operated was a dangerous place within the meaning of that term. In order to meet the court's views, counsel for respondent asked leave to reopen the case for the purpose of offering further evidence relative to the character of the place. Leave being granted, counsel offered in evidence a portion of appellant's answer in which it was contended it had admitted that the place was a dangerous place. While appellant had in its answer denied its negligence, and had also denied that the place where respondent was required to work was dangerous or that it had exposed him to unusual and unnecessary dangers, it had also set up the plea of contributory negligence on the part of respondent as an affirmative defense. In this defense it set forth the facts relating to respondent's negligence in the following language:

"That the danger of injury to plaintiff if he remained in the open at a distance of not more than 250 feet from said work when the blast should be fired was obvious, and would have been known to all persons of the same experience and intelligence of plaintiff, and was known to plaintiff, but, notwithstanding, plaintiff recklessly and negligently failed to take a position further away from the hole and where he would have been protected by a projecting spur or bend in the hillside, but took his position in the open about 250

feet from the hole, and there connected his battery with the said wire, and from said place fired the blast, and by reason of his said negligent acts and omissions directly contributing he suffered the injuries received by him." The court, over appellant's objections, admitted the answer in evidence, and refused to charge the jury that the statements contained in the answer could not be considered as an admission as requested, but, in effect, charged the jury that the statements in the answer could be considered as evidence of the character of the place—that is, that it was an unsafe and dangerous place—and further charged them that respondent was not bound by the statements made in the answer with regard to the fact that the place was dangerous, and that he knew it to be so.

Appellant's counsel insists that the court erred in admitting the statements contained in the affirmative defense as evidence of the facts there averred, and that it also erred in charging the jury as aforesaid. Respondent's counsel defend the rulings of the court upon the ground that the statements contained in the affirmative defense setting up contributory negligence were inconsistent with the denials contained in the answer, and that, therefore, said statements had neutralized said denials.

In view of what follows, it is not necessary to determine at this time what effect shall be given to facts stated in a separate affirmative defense where such facts are contrary to the effect of the denials in a separate negative defense in the same answer. It is not necessary to pass upon that question in order to arrive at a correct solution of the questions involved on this appeal, and for that reason we refrain from expressing any opinion upon the question just outlined. Whatever effect may be given, however, to facts pleaded as aforesaid, the answer, or any other pleading in a case, which has not been superseded by an amended or substituted pleading, can, nevertheless, not be used as evidence either for or against either of the parties without the consent of both. The pleadings and the meaning and effect thereof are questions purely for the court, and not for the jury, to

pass upon. If an answer, therefore, contains an admission of fact or facts, the court must determine both what is admitted and the effect thereof. Pleadings, under our Code system, so long as they are not superseded, are intended merely to state, define, and limit the issues that are presented for determination at the trial. If the defendant admits any fact or facts in its answer, it thereby waives proof of all facts thus admitted, and the issue to which such admissions relate must be determined in accordance with such admissions. The admissions here referred to are express admissions contained in the answer as such. What effect, if any, admissions in the nature of a confession and avoidance or a statement of facts in a separate defense shall receive when such admissions of facts are in conflict with the denials contained in the answer, we, as before stated, leave undetermined at this time. If the defendant should in his answer admit all of the facts stated in the complaint, he, in case the facts are sufficient to constitute a cause of action, could only avoid judgment against himself by setting up some affirmative defense which would avoid the facts admitted by him. If an answer may be introduced in evidence, as was done in this case, and the jury be permitted to say what if any effect shall be given to the statements or admissions contained therein, then the jury, and not the court, determines the meaning and effect of pleadings.

True it is that, when an admission or statement is contained in a pleading which is superseded by another pleading, the facts or admissions contained in the superseded pleading may, in most jurisdictions, including our own, be used as evidence against the party who made the statements or admissions. (*Dry Goods Co. v. Box,* 13 Utah, 494, 45 Pac. 629.) In such a case the superseded pleading has, however, ceased to perform its natural functions as a pleading, and, for that reason is treated merely as a declaration of the party who filed it and as such may be used as evidence against him. In the event such a use is made of it, however, the party against whom it is used may, under oath, explain how the statements or admissions

contained in the pleading came to be made and the purposc for which they were made, and the jury will consider both the statements or admissions and the explanation, and in in view of all the facts and circumstances determine what effect, if any, such statements or admissions, or either of them, shall have or receive as evidence in the case. It would be a somewhat strange proceeding, to say the least, to permit the party to an action to take the witness stand and explain away the legal effect to be given to the statements or admissions contained in his pleadings. Yet, if the pleadings in this case are to be used as evidence the party who filed them (since they are not contractual) must be given the right within certain limits at least to explain the statements therein contained. This would ultimately lead to absurd results and is entirely unnecessary, since the court can and must in every case determine the meaning and effect of all statements or admissions contained in any of the pleadings, and, when once determined, must declare what has been admitted and the legal effect thereof.

Respondent's counsel, however, insist that the denial of the defendant in this case amounted in effect to no denial, since it was limited to a denial of the "material allegations" contained in the complaint. Some courts have held such a denial bad for the reason that the party who verifies it could not be successfully prosecuted for perjury because no one could positively assert that he denied any particular allegation. This objection to our minds is but mere refinement. It has always been conceded that only the material allegations contained in a complaint need be denied or met in the answer. Our statute defines what shall be deemed a material allegation. If a party thus denies all of the "material allegations" contained in the complaint he must be deemed to have denied just what he says he did, and the court must determine as a matter of law just what the material allegations in the complaint are, and, when thus determined, the question of what the party verifying the answer denied is also determined. It may be a better form of denial, perhaps, and which would leave no

room for discussion (and there is nothing left except room for discussion), if the defendant denied each and every allegation not expressly admitted, instead of making the qualification that he denied each and every "material" allegation.

We are therefore of the opinion that the court erred in admitting the answer in evidence for the reasons already stated. The important question, however, still remains to be answered, namely, did the error of admitting appellant's answer in evidence prejudice it in a substantial right? In this case the statements in the answer which the court admitted were in the language of the court's charge admitted for one purpose only; that is, "as a part of the evidence in the case bearing upon the question as to whether the place was dangerous, and is to be considered with the other evidence in the case determining that question." As matter of course, "place" in the foregoing charge referred to the point where the respondent and the foreman were when they operated the battery for the purpose of discharging the blast.

So far as the evidence and the inferences to be deduced therefrom are concerned, there is but one conclusion permissible, which is that the place referred to was dangerous. The testimony of respondent that when the explosion occurred pieces of rock were flying and falling all around him, and that he kept "dodging" them until he was finally struck by one of the flying pieces, and his skull crushed, is not denied. It is not even questioned. That such might be the effect of the explosion certainly a man with the experience of Mr. Buck could have foreseen. Entirely apart from any assumed admission in the answer, is there any reasonable ground left upon which to base a claim that under the conditions detailed the place was not dangerous? Nor in this connection does it make any difference whether the distance that the battery was placed from the hole is as claimed by the respondent and his witnesses, or is as claimed by appellant. If the conditions hereinbefore referred to in fact existed (and they are not denied) where the respondent and the foreman stood, it makes little, if any,

difference so far as making the place dangerous whether the
distance was 100 feet or 250 feet from the blast
hole. But the foreman, who is the only witness who testified
for appellant on this point, did not claim in his testimony
that the place was not dangerous. The effect of his testi-
mony is that, while from long experience one may within
reasonable limits form some judgment with regard to what
may be expected from an explosion such as the one in
question, yet there is no certainty with regard to results, and
no one can say in advance either the size or number, nor
where the pieces of rock will be thrown by the explosion.
From a consideration of all of the foreman's testimony no
other conclusion is permissible than that so long as one
remains within a certain radius from the hole to be
discharged, unless otherwise protected, he is liable to be hit
and hurt from some flying pieces of rock cast out by the
explosion. Indeed, the foreman's testimony is perfectly
natural, and is in strict harmony with what every one knows
who has the slighest knowledge of the force of powder or
of other similar explosives. No rational man of ordinary
experience will seriously contend that one standing in the
open without any protection within either 100 or even 250
feet of a ledge of rock into which had been drilled a hole
of the depth of twelve feet and two and one-half inches in
diameter which was charged with from seventy-five to 125
pounds of powder was occupying a safe place, nor one that
was not inherently dangerous. It might as well be contended
that a sectionman who, in obedience to the direction of the
section foreman, entered upon a railroad track immediately
in front of a fast moving passenger train whose speed could
not be accurately judged, was not entering upon a dangerous
place. It is possible that the one who remains in the open
and in range of a loaded hole may escape injury from the
flying pieces thrown out by the explosion, and it is equally
possible that the one entering upon the track in front of an
oncoming train may escape any hurt, but it does not change
the fact that both places are inherently dangerous and no
amount of testimony or argument can make them otherwise.

The difficult question to be solved in this case, therefore, is not whether the place in question was dangerous, since that question, under the facts and circumstances can be determined but one way, namely, that the place was inherently dangerous, but it is whether under all the circumstances the respondent was guilty of contributory negligence, or whether he assumed the risk of injury in remaining where he did at the time of the explosion. If in this case it were not clear that the foreman, who was respondent's superior, had actually interfered with respondent's judgment, and that in operating the battery he had remained where he did in the face of danger without being influenced by the foreman's statements, we would be required to hold as matter of law that he had voluntarily assumed the risk of injury from any flying pieces of rock, and, further, that he was guilty of negligence in not protecting himself against the threatened dangers by going farther away from the hole or by doing so in some other way. It is manifest from the evidence, however, that, if respondent had been permitted to exercise his own judgment with respect to the choice of place from which he would operate the battery, he would not have remained at the point where he was injured, but would have taken a position less exposed to the flying pieces of rock which might be thrown out by the explosion. The foreman, who was respondent's superior, and who it is conceded was a man of large and varied experience in blasting rock, however, selected the place from which the battery should be operated in discharging the blast, and overruled respondent's objections or suggestions that the place was unsafe, and insisted that they remain where they were.

. That the foreman, under the circumstances of this case, was negligent in thus exposing respondent to the dangers of the explosion, must, we think, be conceded. That appellant was likewise negligent in constantly exposing its employees to the dangers arising from an explosion, when by the expenditure of but little money and time it could have prepared a place from which the battery could be op- **6**

erated which would have shielded and protected the employees from the flying pieces of rock thrown out by explosions, and would thus have been a safe place, is, to our minds, not open to dispute. In view, therefore, that the place was inherently dangerous, and that the foreman and the appellant must be held negligent for the reasons just stated, the question arises whether, notwithstanding the fact that the dangers must have been apparent to respondent, he was not also negligent, and, further, whether he did not assume the risk of injury in remaining where he did to operate the battery for the purpose of discharging the blast. The respondent in his pleadings and upon the trial, and again in his brief in this court, has persistently and consistently maintained that, under the facts and circumstances of this case, he had the right to follow or obey the judgment and directions of his superior without forfeiting his right to hold his master liable for the injury he suffered by reason of doing what he did.

Of course, if the danger was so imminent, threatening, and obvious that no reasonably prudent person under the circumstances would have remained at the place where respondent was directed to remain in operating the battery, then the mere fact that he followed the directions of his superior would be no excuse. We have had occasion in a very recent case—*Fowler v. Union Portland Cement Co.,* 39 Utah, 363, 117 Pac. 462—to again state the rule which ordinarily governs under circumstances like those in this case. At page 465 of the volume referred to, Mr. Justice McCarty, in speaking upon the subject for this court, says:

"The general rule is that where, as in this case. a servant is injured while performing some act in obedience to the orders of his master, he is not chargeable with contributory negligence, unless the act commanded involves danger so obvious and imminent that no reasonably prudent person in his situation and with his knowledge of the danger would undertake it."

We there also approved of what is said by the author in 1 Labatt, Mast. & Serv. section 439, which is as follows:

"If a danger is not so absolute and imminent that injury must almost necessarily result from obedience to an order, and the servant obeys, the master will not afterwards be allowed to defend himself on the ground that the servant ought not to have obeyed the order."

Such a rule is eminently just and equitable, and goes no further than is necessary to place and maintain master and servant upon an equality before the law. If the master desires to cast the burden of avoiding the charge of either contributory negligence or assumption of risk upon the servant, he should not interfere with the servant's judgment if he has expressed any concerning what should be done in the face of danger by requiring the servant to act contrary to his own judgment, or order him to undertake or perform some act or acts which are unusual or extraordinarily dangerous. The servant is not required to set up his own judgment against that of his master or superior and forfeits no rights in not doing so, unless by following the master's orders the servant would be exposed to dangers that are imminent and obvious, and of which he appreciates the consequences. In this case, although respondent may have known that he was exposing himself to danger by remaining with the foreman, yet, in the language of Mr. Labatt, the danger was not "so absolute and imminent that injury must almost necessarily" have resulted to him by following the foreman's directions.

At all events, the question of whether the danger was so obvious and imminent, and whether under all the circumstances the respondent was justified in following the foreman's directions, is not so clear that it can be determined as a matter of law. The question was therefore a proper one to be submitted to the jury.

The law as we have stated it is generally approved by the courts. We shall refrain from citing the numerous cases upon this question which might be cited, but shall refer only to a few well-considered cases where the doctrine is clearly stated and concretely applied: *Stephens v. Hannibal & St.*

*Joe Ry. Co.,* 96 Mo. 211, 212, 9 S. W. 589, 9 Am. St. Rep. 336; *Ballard v. Chicago, R. I. & P. Ry.,* 51 Mo. App. 453; *Monahan v. K. C. Clay & Coal Co.,* 58 Mo. App. 73; *Anderson Pressed Brick Co. v. Sobkowiak,* 148 Ill. 583, 36 N. E. 572; *Cook v. St. P., M. & M. Ry.,* 34 Minn. 45, 24 N. W. 311; *Faulkner v. Mammoth M. Co.,* 23 Utah, 441, 66 Pac. 799; *Christienson v. R. G. W. Ry.,* 27 Utah, 132, 74 Pac. 876, 101 Am. St. Rep. 945; *Frandsen v. C., R. I. & P. Ry.,* 36 Iowa, 375. See, also 26 Cyc. 1221.

About all that we have said so far applies with equal force to the contention that respondent assumed the risk of injury by remaining where he was and by assisting to operate the battery.

No doubt as a matter of law, and as contended by appellant's counsel, respondent assumed the risk of injury from all of the ordinary and usual dangers which arose as an incident to blasting rock at appellant's quarry; and he also assumed the risk of injury from all of such extraordinary and unusual dangers of which he knew or which were open and obvious. This doctrine is, however, in full force and effect only so long as the master permits the servant to exercise his own judgment, and to act upon his own responsibility when confronted with danger. If the master either by himself or through a superior servant interferes with the servant's judgment and the servant in case the place is unsafe is assured by the master that he is safe, or, if the master or such superior directs the servant to go or to remain in a place of unusual danger, and the servant waives his own judgment or obeys the orders of the master under the circumstances and conditions we have stated, then the ordinary rules governing contributory negligence and assumption of risk between master and servant are suspended, and the question whether the servant may or may not recover against the master in case of injury ordinarily becomes one of fact for the jury to pass upon.

Appellant's counsel further insists that the court erred in modifying a certain request to charge by inserting the words we have set forth in italics. The request as modified reads

as follows: "If you find from the evidence that the plaintiff upon his own judgment, *uninfluenced by any assurance of safety on the part of the defendant's foreman,* as to whether or not the place he was standing at the time he fired the shot was safe, or if you find that the plaintiff selected the place but he fired the blast without directions or suggestions of defendant's foreman, then the defendant is not liable, and you should return a verdict for the defendant." Counsel insists that by inserting the italicized words the charge no longer reflected appellant's theory of the evidence, and that it was thus prevented from having the case "submitted from the standpoint of its own evidence."

Without now passing upon the question whether the foregoing instruction was not too broad in view of the evidence, we concede that a party is entitled to have his case submitted to the jury upon the theory of his evidence as well as upon the theory of the whole evidence. One way the court might have followed in charging the jury would have been to charge them in seperate instructions, first, in accordance with respondent's evidence; and, second, in accordance with appellant's evidence which related to the proposition covered by the instruction in question, and in each instruction have directed the jury to return a verdict in accordance with their findings upon that question. The court was not bound to charge the jury in separate instructions, but could cover the question in one without offending against appellant's rights.

Appellant's theory of the evidence was sufficiently covered by what the court told the jury, and hence it was not prejudiced by the court's modification referred to.

Nor is appellant's contention tenable that it had discharged its full duty towards the respondent when it employed a competent foreman to conduct the blasting at the quarry, and that, if such foreman in good faith exercised his best judgment in selecting a place for the respondent to operate the battery, then appellant is not liable for any injury that might have been caused by a mistake of judgment on

the part of its foreman in selecting such a place. The proposition involved is not whether the foreman in good faith exercised his best judgment in directing the blasting and in selecting the place from which to operate the battery, but it is whether he exercised ordinary care and prudence as that term is applied to such an undertaking in directing the respondent from what point to discharge the blast in question. It might as well be contended that if the foreman had not directed respondent where to place the battery, but respondent had selected the place according to his own best judgment, and in exercising such judgment he had selected an unsafe place in consequence of which he was injured by the effect of the explosion, he could not be charged with negligence nor with having assumed the risk of injury, although his judgment had betrayed him into selecting what was obviously a dangerous place from which to operate the battery. The mere statement of the proposition also answers it.

Appellant has also assigned a number of errors relating to the giving of certain instructions, and to refusing certain requests to charge. We have carefully examined the whole charge, and it not only fully and fairly covers every phase of the evidence and every legal proposition that was involved in the case, but in some respects it is more favorable to appellant than the law warrants.

From what has been said, it necessarily follows that the judgment should be affirmed, with costs to respondent. It is so ordered.

McCARTY, J., concurs.

STRAUP, J. (concurring).

I concur. The plaintiff in his complaint alleged that the place where he was directed to fire the battery was dangerous. This fact was material to his cause. The defendant, by its general denial, denied it. It also interposed pleas of affirmative defenses, of contributory negligence, and assumption of risk. Having denied by its general denial that the place was dangerous, the defendant then in its plea of contributory neg-

ligence not assumably or hypothetically, but unqualifiedly and
directly, averred that the place was dangerous, and charged
that the plaintiff was guilty of contributory negligence in
firing the battery at such place. In the argument on a
motion to direct a verdict in favor of the defendant, some
question arose in respect of the proof as to the dangerous and
unsafe character of the place. Plaintiff thereupon read the
answer to the court, and thereafter asked leave to reopen the
case and to offer in evidence the portion of the defendant's
answer wherein he claimed direct averments were made that
the place was dangerous. The case was reopened. Counsel
for the defendant objected to the offer on the grounds: (1)
That, if the answer was to be put in evidence, the whole,
and not a part of it, should be received; and (2) that neither
the whole nor a part was relevant, material, or competent.
The court ruled with the defendant on the first ground. Then
the whole of the answer was offered. The second ground of
the defendant's objection was renewed. The objection was
overruled, and the portion of the answer referred to was read
to the jury by counsel for the plaintiff. As stated by the
Chief Justice, this ruling is one of the principal alleged er-
rors relied on. The appellant did not, in the court below,
nor does it here, contend that the answer in setting forth the
affirmative and special defenses does not contain direct aver-
ments that the place was dangerous and unsafe. No such
claim is made. The contention in respect of the ruling let-
ting the answer in evidence and permitting counsel to read
the portion of it to the jury, and upon which error is predi-
cated, is this: The appellant contends that under the pro-
visions of our Code permitting an answer to contain a gen-
eral or specific denial and a statement of any new matter con-
stituting a defense or counterclaim in which may be set forth
as many defenses to the action as the defendant may have,
inconsistent defenses may be pleaded; that its general denial
to the complaint and its pleas of contributory negligence and
assumption of risk are inconsistent defenses; that an aver-
ment of a fact in one defense cannot be used to destroy,
modify, or affect a denial or averment of a fact in another

pleaded and inconsistent defense in the same answer; and hence the direct averment of the fact in its pleaded affirmative defense of contributory negligence that the place was dangerous cannot be used to destroy, modify, or affect its denial contained in the general denial that the place was dangerous. And upon this ground, and for this reason, and no other, it is urged that the court erred in the ruling.

While pleas of contributory negligence and assumption of risk are in this jurisdiction pleas of affirmative or special defenses, yet they are not pleas of a confession and avoidance; nor are they repugnant to, or inconsistent with, a general denial. The defendant's denial in its general denial that the place was dangerous, and its direct averment in its affirmative defense that the place was dangerous, do not constitute pleas of inconsistent or repugnant defenses. They constitute mere inconsistent and contradictory allegations of fact. In jurisdictions where inconsistent or repugnant defenses are permissible, the rule does not obtain that a defendant in an answer required to be verified by him may in one pleaded defense declare a thing white and in another black, or directly allege totally inconsistent or contradictory facts so that proof of one would necessarily disprove the other. That is not what is meant by the right to plead inconsistent defenses or as many defenses as the defendant has. What is meant by it is well stated in Estee's Pleadings (4th Ed.), section 3381:

"The inconsistent defenses which are allowed to be pleaded in a verified answer are not such as require in their statement a direct contradiction of any fact elsewhere directly averred. They are those in which the inconsistency arises rather by implication of law, being in the nature of pleas of confession and avoidance, as contradistinguished from denials where the party impliedly or hypothetically admits, for the purpose of that particular defense, a fact which he notwithstanding insists does not in truth exist."

Substantially the same principle is also expressed in Phillips on Code Pleading, sections 261, 262, and in Bliss on Code Pleading (3d Ed.), sections 342, 343. In Notes to Cases, in 48 L. R. A. pp. 185-189, the doctrine is stated, and is supported by numerous cases there referred to, that, under code provisions that a defendant in an action may plead as

many defenses as he has, separate pleas in an answer are not objectionable because of repugnancy or inconsistency with each other; but that the inconsistent defenses which may be set up under such provisions in an answer are those in which the inconsistency arises by implication of law, and which are in the nature of pleas of confession and avoidance as contradistinguished from denials, and not such as involve a direct contradiction of any fact elsewhere directly averred. And, as said in some of the cases there referred to, the only limitation upon the right of a defendant to defend himself against an action of the plaintiff on as many different grounds as the nature of the action and the merits of his defense will allow is that they shall not involve the ridiculous absurdity of being inconsistent in fact. I do not see anything in the cases or authorities cited by appellant's counsel which makes against this doctrine. Of course, a plea of a confession and avoidance does not obviate the necessity of proving the averments contradicted by the denial. Why is that so? Because such a plea is only by implication of law, and not in fact inconsistent with or repugnant to the denial. So, too, the setting up of affirmative matter by way of a defense also does not obviate the necessity of proving the averments contradicted by the denial, when such pleaded affirmative matter is only assumably, or by implication of law, and not in fact, repugnant to, or inconsistent with, the denial. The plea of contributory negligence is an affirmative or special defense. It is not inconsistent with a general denial. Such an affirmative or special defense does not obviate the necessity of proving the averments contradicted by the denial when such pleaded affirmative defense is only assumably, or by implication of law, and not in fact, repugnant to, or inconsistent with, the denial. But there is, in this connection, another well-recognized principle of pleading that whatever is not assumably, not hypothetically, not by implication of law, but in fact directly and unqualifiedly averred or admitted as a fact in a special defense, is to that extent a modification of the denial. The general rule in this regard is stated in the syllabus in *Wiley v. Keokuk,* 6 Kan. 94, that:

40 Utah—19

"Whatever is admitted in a special defense operates, so far, as a modification of a general denial, and is to be taken as true, without other proof."

In that case the plaintiff alleged an assault and battery and false imprisonment. The answer set up two grounds of defense: First, a general denial; and, second, a special defense showing what the defendant had really done and attempting to justify his acts by those things. Said the court:

"Now, notwithstanding the general denial, we suppose that whatever was admitted in the special defense need not have been proved. This special defense so far modified the general denial that whatever was admitted therein was excepted from the general denial. It ought to be so, on general principles of pleading. It must be so, inasmuch as it is a formal confession of the existence of the facts therein set forth."

In the case of *Hartwell v. Page et al.*, 14 Wis. 53, the court said:

"But we have several times decided that, although under the Code a defendant may set up as many different defenses as he pleases, yet he cannot, by making repugnant allegations, compel the plaintiff, in order to avoid a denial in one part of the answer, to prove any fact specifically admitted in another part. The provision requiring a verification of the pleadings shows that it was not the design to allow repugnant allegations, but to introduce the element of truth in pleading, and compel the defendant to admit such parts of the plaintiff's case as he could not conscientiously deny. If a fact sustaining the plaintiff's right is expressly admitted in any part of the answer, that fact is to be taken as true against the defendant, and the plaintiff is relieved from the necessity of proving it, just as he would have been as to any fact admitted in an answer in chancery."

Other cases can be cited to the same effect, but that is unnecessary, for the principle announced by these cases is well understood and is generally recognized. And why should it not be so? As said by Bliss, the leading object of code pleading is to bring to the view of the court the real controversy between the parties—to make them show on paper wherein they agree, and wherein they disagree—and that because of the requirement that the answer shall be sworn to it would be wrong to permit an affiant to file a pleading false upon its face.

An unqualified admission or an unqualified direct averment of a fact by one litigant in a pleading filed in the cause and upon which the triable issues are founded is an admission of a matter of fact, and his adversary may treat it as a waiver of proof of such fact.    And when in such case such an admission or averment of a fact is made by one litigant, not assumably or hypothetically, not impliedly or by implication of law, but directly and unqualifiedly, I do not see what principle of pleading is violated if his adversary is permitted to treat such admissions or averment as a waiver of proof of such fact.    A contrary doctrine gives countenance to sham and frivolous pleadings, and invites perjury.    What a ridiculous absurdity it would be if an action to recover on a promissory note the defendant, though permitted as he is to file a general denial denying the execution and delivery of the note and in the same answer to interpose a special plea or defense of payment, should, in interposing such special plea, directly and unqualifiedly aver that he in fact executed and delivered the note sued on and as alleged in the complaint, but that he paid it, and if such positive and direct averments of execution and delivery so made by him could not be treated as a modification of his general denial, and as a waiver of proof of the fact of execution and delivery.    As well say that the defendant in such case while giving his testimony on the trial in support of his general denial had the license to testify that he did not execute and deliver the note, and while testifying in support of his special plea that he did execute and deliver it.    To say that the defendant in the supposed case unnecessarily averred the fact of execution and delivery of the note, and for that reason the averment could be treated as a waiver of proof, is to say that the litigant shall be bound by his unnecessary averment of a fact, but not by his direct and necessary averment, which is illogical.    I am therefore of the opinion that, since the defendant in its answer directly and unqualifiedly averred that the place was in fact dangerous, the plaintiff was entitled to treat such averment as an admission and a waiver of proof of such fact, and that the court ought so to have ruled and directed the jury,

and erred in submitting the answer to the jury, and in permitting them to determine therefrom what was, or what was not, admitted. It is the duty of the court, not the jury, to construe the pleadings, and to determine what are the issues, and what are the admitted or disputed facts arising upon the pleadings in the cause. (*Pulos v. R. G. W. Ry. Co.*, 37 Utah, 238, 107 Pac. 241.) Mr. Wigmore in his work on Evidence (volume 2, section 1064), well puts the proposition by saying that the pleadings in a cause are for the purpose and use in the suit as judicial admissions, not as means of evidence, but as a limitation of the issues and a waiver of proof. "Thus," says the author, "any reference that may be made to them, where the one party desires to avail himself of the other's pleading, is not a process of using evidence, but an invocation of the right to confine the issues and to insist on treating as established the facts as admitted in the pleadings. This much being generally conceded, it follows that a party may at any and all times invoke the language of his opponent's pleadings as rendering certain facts indisputable; and that, in doing this he is, on the one hand, neither required nor allowed to offer the pleading in evidence in the ordinary manner, nor, on the other hand, forbidden to comment in argument without having made a formal offer. He is merely advocating a construction of the judicial act of waiver of proof, and no rule of evidence is involved." But, as determined by the Chief Justice, the ruling was harmless, for the admitted evidence related wholly to an undisputed and admitted fact, not only upon the evidence, but the pleadings as well.