MILLER v. UTAH CONSOL. MINING CO. et al.

No. 3261.    Decided Feb. 11, .1919.    (178 Pac. 771.)

1. MASTER AND SERVANT—DUTY TO WARN—INEXPERIENCED SERVANT. Where plaintiff was an entire stranger to defendant's mine; when taken to a stope and put to work as a miner, defendant owed him the duty of acquainting him with any dangerous condition of which he had no knowledge, and which would not be apparent to him. (Page 374.)

2. MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—QUESTION FOR JURY. Whether defendant mining company was negligent in failing to timber the face of the stope before directing plaintiff to work therein as a miner, held, under the evidence, for the jury. (Page 374.)

3. MASTER AND SERVANT—INJURY TO SERVANT—RELIANCE ON CARE OF MASTER. In entering the employment of defendant as a miner, plaintiff had the right to assume that defendant had exercised ordinary care to provide him with a reasonably safe place in which to work.    (Page 374.)

4. MASTER AND SERVANT—RISKS INCIDENT TO EMPLOYMENT—QUESTION FOR JURY. In action for injuries to plaintiff, mucker, due to a large quantity of rock falling from the roof and sides of a stope in which he was working, whether the risk was incident to the employment was, in view of the circumstances and conditions surrounding the accident, a question for the jury. (Page 374.)

5. MASTER AND SERVANT—RISKS ASSUMED—NEGLIGENCE OF MASTER. If it was negligence of defendant to place plaintiff at work as a miner in a stope not sufficiently timbered, and where plaintiff had no knowledge of and could not see or appreciate the danger while acting in obedience to defendant's orders, plaintiff did not assume the risk, since negligence of the master is never assumed by the servant.[1]   (Page 374.)

6. TRIAL—INSTRUCTIONS SUFFICIENTLY GIVEN—REFUSAL. In an action for injuries to plaintiff, mucker, due to a large quantity of rock falling from the roof and sides of a stope in which he was working, held that instructions given by the trial court substantially submitted defendant's theory as fully and fairly as might have been done by giving requests denied defendant.[2]   (Page 376.)

7. MASTER AND SERVANT—DUTY TO MAKE PLACE SAFE—EVIDENCE. In an action for injuries to plaintiff, mucker, due to a large quantity of rock falling from the roof and sides of a stope in which he was working, held, under the evidence, that the duty of making the stope safe did not devolve upon plaintiff, and he had the right to assume that defendant had used reasonable care to discover and remedy all dangerous defects.[3]   (Page 379.)

8. APPEAL AND ERROR—ERRONEOUS INSTRUCTIONS—REVERSIBLE ERROR. While instructions that it was the duty of defendant to use reasonable and ordinary care to provide plaintiff with a safe place in which to do his work, and that plaintiff had the right to assume that duty had been performed, were erroneous, they were not subject to the objection that they required defendant to furnish an absolutely safe place, and the error in so instructing does not justify reversal.   (Page 379.)

9. APPEAL AND ERROR—ERRONEOUS INSTRUCTION—ERROR FAVORABLE TO APPELLANT. Although instruction with regard to fellow servant law was erroneous, its giving was not prejudicial to defendant, where plaintiff and the person mentioned therein were not fellow servants, and the court might well have so instructed.   (Page 380.)

Appeal from the District Court of Salt Lake County, Third District; *Hon. Wm. H. Bramel,* Judge.

[1] *Trihay* v. *Min. Co.,* 4 Utah, 468, 11 Pac. 612; *Cunningham* v. *U. P. R. R. Co.,* 4 Utah, 206, 7 Pac. 795; *Andrews* v. *Free,* 45 Utah, 505, 146 Pac. 555. .

[2] *Toone* v. *O'Neill Const. Co.,* 40 Utah, 265, 121 Pac. 10.

[3] *Urich* v. *Apex Min. Co.,* 51 Utah, 206, 169 Pac. 263; *Dovich* v. *Chief Con. Min. Co.,* 53 Utah, 522, 174 Pac. 627.

Action by Mike Miller against the Utah Consolidated Mining Company and others.

Motion for nonsuit was granted as to the unnamed defendants, and from the judgment for plaintiff against it the named defendant appeals.

AFFIRMED.

*King, Straub, Nibley & Leatherwood* for appellant.

*Willard Hanson* and *Shirley P. Jones* for respondent.

CORFMAN, C. J.

This was an action brought to recover damages alleged to have been sustained through negligence while plaintiff was rendering services as an employee in the mine of defendant Utah Consolidated Mining Company. The complaint, in substance, alleged that on September 20, 1916, plaintiff was employed as a mucker to work in defendant company's Highland Boy mine at Bingham Canyon, Utah, of which the defendant Nelson was the foreman, and the defendant Winther the superintendent, who supervised and directed plaintiff in his work; that on said day the plaintiff was directed to go to a certain stope known as stope 12-3g, on the 1,200 level of said mine, and work therein; that while so engaged large quantities of rock and material fell from the roof and sides of said stope and injured plaintiff; that it was the duty of defendants to inspect the said stope, and that not to do so rendered it dangerous and unsafe, of which the defendants had knowledge, but the plaintiff had no knowledge; that the rock and ground at the sides and roof of the said stope were loose and liable to fall; and that the defendants had neglected to inspect the same, and had failed to pick down the loose rock and earth, or to warn the plaintiff of danger, as was their duty. The answer admitted the employment of the plaintiff, and that Nelson was the foreman and Winther was the superintendent of the mine; denied the other allegations of the complaint; and affirmatively

pleaded contributory negligence, assumption of risk, and that the injury to plaintiff, if any, was occasioned by the negligence of a fellow servant.

At the trial testimony was given tending to show the following facts:

On September 20, 1916, plaintiff was employed to work in defendant company's mine at Bingham Canyon. He was directed to work as a miner or machineman in stope 12-3g on the 1,200 level, under supervision of the defendant Nelson as foreman, and the defendant Winther as superintendent. Plaintiff had never been in the mine before, and the accident occurred within thirty minutes after plaintiff entered the said stope where he was directed to work. Two shifts were working in this stope, a night shift and a day shift. Plaintiff was on the day shift. This shift consisted of plaintiff as miner or machineman, and his helper, a mucker, a trammer, and one Kordich, a special timberman, with his helper. The stope was about seven sets high and two sets wide. Six sets were timbered. The seventh set had not been put in. When Kordich, the timberman, entered the stope on the morning of the day of the accident the night shift, after drilling and blasting, had made room for a set of timbers to be put in on the seventh set. Before placing the timbers in the seventh set the timberman found it would be necessary to take down a boulder near the tenant of one of the posts. The plaintiff was then working with a machine in the sixth set, doing the work of a miner below the timberman. The timberman first endeavored to pick the boulder down from the face of the roof of the stope and was unable to do so. Chestnut, the stope boss, appeared, and his attention was called to the boulder and the necessity of blasting was mentioned. The timberman expressed some fear that much other material might come down in blasting. The stope boss replied: "Blast it. If it comes, let it come." Thereupon powder was procured and placed in seams about the boulder, and the timberman and his helper withdrew, at the same time warning the plaintiff, and all went to a nearby place of safety while the shot was fired. After the explosion plaintiff returned to his place of work on the sixth set, and the timberman returned to the seventh set, again inspected the

face of the stope, and discovered that there was still another boulder near the roof which prevented the placing of the timbers. There is evidence to show that the shift boss again appeared at the seventh set when his attention was called to this boulder. It was suggested the boulder might stay and would not fall until after the timbers were put in. Before the timbers could be put in some chipping out of the material about the boulder was found necessary. As the shift boss left the stope he directed the plaintiff to let the timberman have the machine if he wanted it. The timberman had proceeded to pick down the loose rock and material preparatory to putting up the timbers. Lagging had been placed so as to catch the loose material and prevent its falling on those beneath. Timbers were brought up from below by the timberman and set up, but it was still found that it would be necessary to remove some material before caps could be placed in the timbers. The plaintiff was now at work as before stated on the sixth set below, drilling holes with his machine. The timberman called to the plaintiff to bring him the machine. The plaintiff then proceeded to take the machine up the ladder from the sixth to the seventh set, where the timberman was intending to use the machine in chipping material about the boulder. As to whether the timberman actually used the machine the testimony is not clear. Some of the testimony tends to show the plaintiff handed the machine to the timberman, and the timberman proceeded to do some chipping about the boulder before the roof caved, while other testimony shows that the cave came just at the time or immediately after the machine was handed to the timberman by the plaintiff. Anyway, within a very short time a large quantity of earth and rock fell from the roof, and occasioned the injuries to the plaintiff of which he complains. The plaintiff testified that he had never been on the seventh set until called there by the timberman; that he knew nothing concerning the roof of the stope, and that at his place of work he could not see the conditions on the seventh set, where the timberman was working. There is also testimony in the record tending to show that the plaintiff was, on the evening before, first employed as a mucker, but on being taken to the mine in the morning he was directed to and did work as a miner

operating a Waugh drilling machine without any protest. The testimony also shows that it was the custom in defendant company's mine, as well as in other mines in Bingham Canyon, for the miner to do his own timbering at the place in which he was working, and that in defendant company's mine an ample supply of timbers was to be had for that purpose.

Trial was to a jury, and a verdict was returned in plaintiff's favor against the defendant company, upon which judgment was entered accordingly.

At the conclusion of plaintiff's testimony defendants moved for a nonsuit, which was granted as to the defendants Nelson and Winther, but denied as to the defendant mining company. The mining company also moved for a directed verdict and a new trial. Both were denied. Defendant mining company appeals.

The principal assignments of error argued and relied upon by appellant go to the rulings of the trial court in denying the appellant's motion for nonsuit, the refusal to direct a verdict for appellant, and exceptions taken to the charge given the jury, and exceptions to the refusal to charge as requested by appellant.

It is first contended that there was no proof of negligence on the part of appellant; that the evidence conclusively shows that the face of the stope, in the usual and ordinary course of mining, was left open or exposed by the night shift; that immediately after the day shift came into the stope the roof of the stope was inspected by both the timberman and the shift boss, and the rock and material that afterwards caved and injured the plaintiff was, as shown by the testimony, not likely to fall before timbers on the seventh set could be put in place. In other words, if we correctly understand the contention of appellant it is that, first, the roof was properly and seasonably inspected, and in the judgment of a competent and experienced timberman and a shift boss was thought to be reasonably safe; secondly, that in practical mining some time must necessarily elapse between the breaking down of the face of a stope and the putting up of timbers, when there can be no support for the roof or face of the stope, and therefore it follows, if ordinary care and diligence are exercised

in the inspection, and timbering follows in seasonable time, no negligence can be attributable to the master if the roof falls and injures the servant working as a miner in the stope while an effort is thus being made to make a place safe. Counsel have cited a number of cases in this connection announcing that the familiar rule that the master must use reasonable care and diligence to furnish his servant a reasonably safe place to work has no application to a place where the work being prosecuted is for the purpose of making a dangerous place safe, or where the work being done gives rise to constant change of conditions. Among the numerous cases cited are the decisions of this court, *Fritz* v. *Electric L. Co.*, 18 Utah, 493, 56 Pac. 90, and *Golesh* v. *Utah Apex Min. Co.*, 49 Utah, 232, 162 Pac. 369. We will not pause to discuss the cases cited; for, as we think, all of them are clearly distinguishable, and none of them announces any rule of law or doctrine applicable to the facts and circumstances disclosed by the record in the case at bar.

In this case the undisputed facts are that the plaintiff was employed by appellant and put to work in a mine with which he was wholly unacquainted. He was taken to the stope in question, and directed to work as a miner on the sixth set. The sixth set was timbered. The seventh set was above him and not timbered. The timberman was at work on the seventh set picking down material preparatory to timbering there. Lagging was over the sixth set. The plaintiff testified there were no lights in the stope except the ordinary carbide lamps used by the employees at work there, and that from his position he could not see the roof from which the rock fell. He was directed by appellant to run the machine drill on the sixth set without any suggestion as to the condition surrounding him. That material might fall upon him from the roof of the stope by taking the machine to the seventh set and handing it to the timberman who had called for it the plaintiff did not know, nor did the appellant afford him any opportunity of ascertaining until, in obedience to directions, he had ascended the ladder from the sixth to the seventh set for the purpose of handing the machine to the timberman. According to the testimony the material fell from the face of

the stope immediately after the plaintiff handed the machine to the timberman. That the plaintiff was not previously warned of the dangerous condition of the roof of the stope must be, in view of the evidence, conceded. Although the timberman and the mucker boss must have appreciated there was danger of loose rock falling from the face of the stope after they inspected it, they failed to warn the plaintiff. Kordich, the timberman, testified:

"Q. Did you see Chestnut (mucker boss) that morning? A. Yes, sir. * * * Q. When he came up did you talk with him? A. Yes, sir. Q. What did he say? A. I told him, I says, 'I have got a big boulder here. I'm going to blast that down.' * * * Q. What did he say? A. He says, 'Blast it.' Q. What did you say to him? A. I says, I told him I was scared for that boulder up on top coming down. He says, 'Maybe not come.' * * * Q. What do you mean by that on top coming down? A. It was pretty loose on top. * * * Q. When you say blast this boulder you mean the one by the tenant? A. Yes, sir. * * * Q. Was it all loose in there? A. Yes; it was all loose. Q. What did he say to you? A. He says, 'Blast it. If it come, let 'er come.' That was what he said. * * * Q. What did you do? A. I blasted it. * * * Q. Then what did you do? A. I came back again in the place. * * * Q. Did you see Miller (the plaintiff)—do you know where he went? A. He stayed on the bottom floor. He stayed on the sixth and I go on the seventh. * * * Q. Did Chestnut come back again? A. Yes, sir. * * * Q. What did he say? A. He told me, 'You break the rock down?' I says, 'Yes.' * * * Q. What else did you say? A. He says, he asked me, 'How is it, that boulder up in the top?' I says, 'It's same as before.' * * * Q. Was it loose? A. It was loose, but it stayed on top of the timber. Q. What did he say about it? A. He never say anything; oh, 'Maybe it stay before you put some timbers in.' Q. 'Maybe it would stay until you put the timbers in'? A. Yes. * * * Q. When you said you thought it would stay, that the ground would stay up there, how long did you think it would stay? A. I don't know. Never can tell how long it will stay. Q. Did it look pretty bad? A. I think it would stay, but I don't know. I

never can tell, but I could see it was loose. Q. But you thought it might stay until you could get the timbers under it? A. Sure.''

In view of the fact that plaintiff was an entire stranger to appellant's mine when he was taken to the stope in question and put to work as a miner, we think the appellant owed him the very high duty of acquainting him with any dangerous condition that would surround him of which it had knowledge and which would not be apparent to him while acting in obedience to its orders.

The question as to whether or not the appellant was negligent in failing to timber the face of the stope before the plaintiff was directed to work in it as a miner, under the conditions and circumstances as disclosed by the testimony, was clearly one for the jury.

Nor may the doctrine of assumption of risk be held to apply. In entering the employment of appellant the plaintiff had a right to assume that appellant had exercised ordinary care to provide him with a reasonably safe place in which to work. Appellant contends that the risks which attended the plaintiff were inherent in his work or employment as a miner. We cannot agree with this contention. In view of the circumstances and conditions surrounding the accident complained of by plaintiff, the question as to whether the risk was incident to the employment again became one of fact for the jury. The doctrine that an employee assumes the ordinary risks and dangers of his employment which are known to him, or which, by the exercise of ordinary diligence, he should have known, is one of universal application. However, negligence of the master is never a risk assumed by the employee. If it was negligence for the appellant to place plaintiff at work as a miner in a stope not sufficiently timbered, of which fact appellant, after inspection and finding the rock and material loose and liable to fall, had knowledge, of all of which the plaintiff had no knowledge, and from the position he occupied and in which he was directed to work on the sixth set, he could not see or appreciate the danger to which he was exposed while acting in obedience to appellant's orders, then the plaintiff did not

assume the risk.   True, there is testimony in the record tend-
ing to show that it was the custom at appellant's mine, and in
other mines at Bingham Canyon, for the miner to do his own
timbering, and that timbers were available for that purpose at
appellant's mine where the accident to plaintiff took place.
Had plaintiff been injured in the usual performance of his
duties while working as a miner and machineman on the sixth
set—his place of work—we think a different rule of law might
apply.   He then would have had opportunity of seeing, know-
ing, and appreciating the dangerous conditions that con-
fronted him.   As we view the record, there is absolutely no
testimony therein which would warrant an assumption that
the cave came from the sixth set, or from any place in the
stope where the plaintiff was in a position to know of and
appreciate the danger.

As was said in *Urich* v. *Apex Min. Co.*, 51 Utah, 206, 169
Pac. 263:

"The plaintiff was charged only with the duty of inspecting and
making reasonably safe the place where he was working.   He had noth-
ing to do with inspecting any other portion of the mine or maintain-
ing it safe.   It was the master's duty to make and maintain every part
of the mine reasonably safe, and the master was absolved from the per-
formance of that duty as against the plaintiff only at the particular
place where he was engaged in his regular work.   As to that place the
plaintiff absolved the master from the duty aforesaid, but he did not do
so with respect to any other place in the mine."

To the same effect are *Trihay* v. *Min. Co.*, 4 Utah, 468, 11
Pac. 612; *Cunningham* v. *U. P. R. R. Co.*, 4 Utah, 206, 7 Pac.
795; *Andrews* v. *Free et al.*, 45 Utah, 505, 146 Pac. 555;
*Dovich* v. *Chief Con. Min. Co.*, 53 Utah, 522, 174 Pac. 627;
*Proctor Coal Co.* v. *Price's Adm'r* (Ky.) 189 S. W. 923; *Rock
Island Coal Min. Co.* v. *Davis*, 44 Okl. 412, 144 Pac. 600;
*Himrod Coal Co.* v. *Clark*, 197 Ill. 514, 64 N. E. 283; *Gennaux*
v. *N. W. Imp. Co.*, 72 Wash. 268, 130 Pac. 495; *Highland Boy
Gold Min. Co.* v. *Pouch*, 124 Fed. 148, 61 C. C. A. 40; *Schlack-
er* v. *Mining Co.*, 89 Mich. 253, 50 N. W. 839; *Tennessee Cop-
per Co.* v. *Gaddy*, 207 Fed. 297, 125 C. C. A. 41; *Ashland
Coal, etc., Co.* v. *Wallace's Adm'r*, 101 Ky. 626, 42 S. W. 744,
43 S. W. 207.

It is next contended that the trial court erred in the refusal to charge the jury in accordance with the appellant's requests. Requests Nos. 2 and 3, denied by the court, were of like import. No. 3 was as follows:

"The mere fact that the rock fell from the roof of the stope and caused the injury to plaintiff is not sufficient to entitle the plaintiff to recover. It is necessary, in addition to this, that the defendant, or one of its bosses in charge of the work, should have known, or should reasonably have had facts sufficient to put him on knowledge of the fact, first, that the rock in the roof was likely to fall or might fall; and, second, that the plaintiff might reasonably be in such a position as that a fall might injure him; and, third, that the plaintiff in the discharge of his duties might reasonably be unaware of the danger from such rock if it did fall."

Request No. 6, which was denied, was as follows:

"If you find that the mucker boss and the timberman were experienced and qualified men, and that they, immediately prior to the accident, examined the portion of the roof which subsequently fell and caused the injury, and that in their judgment the place was safe and not likely to come down prior to the completion of the timbering, you are instructed that it was not negligence on the part of the defendant to leave the roof in the shape and condition it was left. The duty of the defendant is performed when it uses all reasonable precautions, and it is not a guarantor of the absolute safety of its employees."

Request No. 7, also denied, was to the effect that if neither of the defendant's bosses nor its timberman had reasonable cause to believe the place where plaintiff was at work unsafe, then the mere fact that material fell would not justify the plaintiff in holding appellant liable therefor.

Request No. 8, the denial of which is complained of, was to the effect that if the mucker boss had inspected the place, and in doing so reasonably and justifiably found it safe, and not liable to fall, the plaintiff had no right to complain if within a short time thereafter, by reason of the work of the timberman or other supervening cause, conditions were changed, and the place rendered unsafe for the plaintiff.

It is quite true that the trial court, in charging the jury, failed to be as explicit in stating the law applicable to some of the testimony in the case as did appellant in the several requests refused. However, the court did, in substance and effect, so charge that the jury could readily understand the issues involved, and the law applicable to the facts that were within their province to determine in arriving at their verdict. After explicitly stating the issues to the jury, as defined by the pleadings, the court told the jury that—

"In order to recover in this action the burden is on the plaintiff to prove by a preponderance of the evidence that he was injured by reason of the carelessness or negligence of the defendant, and that said carelessness or negligence consisted of some one or more of the acts or omissions on the part of the defendant alleged in the complaint as negligence."

Further that—

"In each instance where either party to this action alleges and relies upon the existence of any fact, and the existence of such fact is denied by the opposing party, the burden of proof rests upon the party alleging such fact to prove his allegation."

And again:

"You should consider all the evidence in the case, whether given on the part of the plaintiff or on the part of defendant, in determining where lies the preponderance of the evidence thereon."

Also:

"From the mere fact that the accident happened, without more, you cannot find the defendant, or either party, guilty of negligence."

The court also instructed the jury that:

"If you find by a preponderance of the evidence that the defendant company used reasonable care in inspecting, scaling off, and propping up or securing the loose rock and earth in question, and that after such work was performed the condition and appearance of said earth and rock, and the supports thereof, were such as would cause a reasonably prudent man, who was reasonably well versed in the art of inspecting places and timbering in places of that nature, to be-

lieve in good faith that said earth and rock were properly scaled, and were properly timbered and secure, and would not fall, and that the servants of said defendant making said inspection were competent therefor and did so believe, then, and in that case, you cannot find defendant guilty of negligence in failing properly to inspect said place or in failing to scale off or timber the same properly. But, on the other hand, if you find from the preponderance of the evidence that the condition of the said earth and rock and the supports thereof was such that defendant, or the agents or servants of defendant who inspected the same, knew, or, by the exercise of reasonable care and competency in that art, could have known, that the same was loose or not properly timbered or scaled, and that the same might fall, and if you further find from a preponderance of the evidence that said defendant set plaintiff to work in a place where the performance of said work and the smaller duties incident thereto might bring him under said loose rock, and that defendant did not warn plaintiff of said danger, and plaintiff did not know of the same, and the nature of said danger was such that it was not open and obvious, and readily observable by plaintiff from his place of work or places he occupied in said mine, then, and in that case, you must find that defendant was guilty of negligence in not providing plaintiff a safe place in which to work.''

The defendant was entitled to have its theory of the case submitted to the jury under proper instructions so long as the theory was based on some substantial testimony. Not necessarily by separate instructions, but by instructions covering the questions involving both the plaintiff's and defendant's theories. From the foregoing instructions given by the trial court it is obvious that this was not only what the trial court attempted, but substantially did as fully and fairly as it might have been done by the giving of the requests denied the defendant. *Toone* v. *O'Neill Const. Co.*, 40 Utah, 265, 121 Pac. 10.

The appellant next complains that certain instructions given did not correctly state the law. The court told the jury

that plaintiff "had the right to assume that the defend-
ant had used reasonable care to discover and remedy          7
all dangerous defects in and about his place of work
discernible by proper inspection." Keeping in mind that
plaintiff was an entire stranger to appellant's mine; that
plaintiff was directed to work as a miner at a particular place
on a certain set of the stope in question, from where, ac-
cording to the testimony, it was impossible for him to ap-
preciate the risk he was taking in going from the sixth set to
the seventh in obedience to orders—we think the charge was
a proper one. Had the plaintiff been injured while working
on the sixth set, where, as a miner, he was chargeable with
keeping his own place of work safe, there would be merit in
appellant's contention. But, under the facts and circum-
stances of this case, the duty of making the roof of the stope
safe from where the cave came did not devolve upon plaint-
iff. *Urich* v. *Mining Co.*, supra; *Dovich* v. *Mining Co.*, supra.

The trial court charged the jury that "it was the duty of
the defendant to use reasonable and ordinary care to provide
plaintiff with a safe place in which to do his work,"
and that it was "the duty of the master to make the          8
employee's place of work reasonably safe, and that the
employee has the right to assume that this duty has been
performed." It is contended by appellant that in so charg-
ing the jury was in effect told that it was the duty of the
appellant to furnish the plaintiff an absolutely safe place to
work. The instructions complained of were, in our judg-
ment, erroneous. What the court doubtless meant to tell the
jury was that it was the duty of appellant to use ordinary
care to furnish the plaintiff a reasonably safe place to work.
We do not think, however, the expressions used by the trial
court could have so misled the jury, nor that if the precise
language contended for had been employed the verdict would
have been different. Nor would we be justified in reversing
the judgment on this ground alone. Nor do we think the in-
structions as given are susceptible of the extreme construc-
tion placed upon them by counsel for appellant that the jury
might assume that the appellant was an insurer, and that it

was its duty to furnish an absolutely safe place for plaintiff to work.

Appellant also complains of the trial court instructing the jury with regard to the fellow servant law. The court charged:

"If you find from a preponderance of the evidence that plaintiff and Kordich were both miners, working together at the same time and place as miners, or that they were both timbermen and miners, working together at the same time and place mining and timbering therein, and that said Kordich was not intrusted with any authority or superintendence over plaintiff, and that plaintiff was then and there injured by the negligence of Kordich proximately causing said injury, without any negligence on the part of the defendant proximately contributing thereto, you must find in favor of the defendant."

Assuming, without deciding, the charge as given, under appellant's theory of the case, was erroneous, it certainly was not prejudicial. As we view the case, the plaintiff and the timberman were not fellow servants. Well might the court have given a positive instruction to that effect under the undisputed testimony of the case.

After a careful review of all the questions involved on this appeal, we are convinced that there is no prejudicial error in the record; that the trial court was right in denying appellant's motions, both for a nonsuit and a directed verdict; and that the application for a new trial was properly denied.

The judgment is affirmed, with costs to respondent.

FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.