(No. 6498.   February 9, 1939.)

ALICE STUART, GORDON WILLIAM STUART, by His Guardian ad Litem, ALICE STUART; and GILBERT EDWARD STUART, by His Guardian ad Litem, ALICE STUART, Respondents, v. ORA McVEY, G. M. McVEY and M. O. McVEY, Copartners Doing Business Under the Firm Name and Style of McVEY'S.

[87 Pac. (2d) 446.]

Frank L. Stephan and J. H. Blandford, for Appellants.

Chapman and Chapman, for Respondents.

BUDGE, J.—This action for damages for the death of Floyd Stuart was instituted as the result of a collision occurring near Twin Falls about 9 o'clock in the evening of August 5, 1936, between the truck of appellants, driven by Leroy Goible, and an automobile owned and driven by Floyd Stuart, as a result of which collision Stuart was injured and died August 9, 1936. The record discloses, among other things, the following facts which are virtually without conflict: The highway right of way is 48 feet wide and the oiled portion thereof is 18 feet wide, on each side of which there is a graveled shoulder 3 feet in width and an additional dirt shoulder varying from 2 to 3 feet in width. The model T Ford sedan driven by deceased was traveling in an easterly direction and the truck of appellants was traveling in a westerly direction, both on the above-described highway. Appellants' truck had a flat bed or rack extending out 20 inches from the edge of its

cab, the widest portion of the truck (the bed) being 7 feet 11 inches. In some manner in meeting and attempting to pass, the truck and the Ford collided. The point of impact on the Ford appeared to be on its left-hand side just over and back of the hood and about four inches back on the body "at about the exact spot where the old parking lights used to be on the old makes of cars." The point of impact on the truck appeared to be about 4 inches in from the left front corner of the truck bed or rack. A quantity of broken glass was found at a point on the south side of the highway, which point apparently approximates the point of collision. The deceased's car, after the collision, rested on the highway 60 feet beyond and east of the point of collision. The tracks of the truck disclosed it had traveled, immediately before reaching the point of collision, a distance of about 6 steps with its right wheels, 6 to 8 inches off the oil on the north side of the highway, the right hand side with reference to the truck. The point where the broken glass was found was even with, that is, immediately south of, the point where the right wheels of the truck came back on the oiled portion of the road. The tracks of the truck indicated that from the point where its right wheels again came on to the oiled portion of the highway it crossed the highway southwesterly at an angle of 30 degrees, "across the road to the borrow pit through a fence and 71 steps as I stepped it off."

There is evidence that deceased's car had but one light and that as the car approached the truck it weaved from side to side, first on the right and then on the wrong side of the road, as if mechanically defective or driven by a person intoxicated, and there is further evidence that the odor of liquor was noticed upon Stuart's breath when he was being taken to the hospital after the collision.

The jury returned a verdict in favor of respondents, wife and children of the deceased Stuart, in the amount of $7,500 and from the judgment entered thereon and an order denying motion for new trial this appeal is taken.

While there was considerable evidence introduced in the case it does not appear either necessary or essential to a determination of the appeal to review it in minute detail. From the evidence and as appears from the foregoing statement

it is reasonable to conclude that any one of several factors may have caused the collision. Among other grounds for reversal appellants urge that the court erred in giving instructions numbered 20, 24, 25 and 26.

Instruction number 20, urged by appellants to be erroneous, reciting:

"You are instructed, gentlemen of the jury, if you find from the evidence that the defendant's driver, Leroy Goible, at the time of the accident in question was driving his truck upon the left-hand side of the highway, that then in that event your verdict should be for the plaintiffs."

does not express the law obtaining in this state, but is contrary thereto, in effect instructing the jury that driving on the left-hand side of the highway is negligence *per se*. In *Hamilton v. Carpenter,* 49 Ida. 629, 290 Pac. 724, this court announced the rule that where one collides with another to his left of the center of the highway he is *prima facie* guilty of negligence:

"We think the purpose of the vehicle law is to enjoin vigilance and caution at all times upon all traveling the highways, such vigilance must be commensurate with conditions and emergencies that suddenly arise in modern highway travel. The vehicle law, by the rule in question, anticipates that ordinarily cars meeting on the highway should pass each to the right of the other. Therefore when one collides with another to his left of the center of the highway he is *prima facie* guilty of negligence, which is *prima facie* deemed a proximate cause of any damage resulting. However, impending danger may alter duty, and where one comes into the right of way of another it is the right of one whose right of way may be thus occupied to avail himself of an apparent opportunity to avoid collision. In such reasonable attempt to avoid an impending collision one may turn to the left beyond the center line without necessarily offending against the law of negligence though he failed to avoid the collision. Under such circumstances, *whether or not he is guilty of negligence in taking the course he pursued is dependent upon whether or not under the circumstances he acted in a reasonably prudent manner.* (Cases.)" (Emphasis inserted.)

In *McCoy v. Krengel*, 52 Ida. 626, 17 Pac. (2d) 547, the court uses the following language:

"If instruction No. 7 stood alone, and the jury could have considered No. 9 applicable to it, there might be merit to appellant's contention, but No. 8 in effect follows *Hamilton v. Carpenter, supra,* advising the jury that driving on the left-hand side of the road in and of itself, does not constitute negligence *per se,* but *only where so driving the driver 'failed to exercise ordinary care' would it be negligence.* Whether or not he was guilty of negligence in taking the course he pursued is dependent upon whether he acted in a reasonably prudent manner. In the case at bar, instead of saying 'reasonably prudent manner,' the court instructed that if he 'failed to exercise ordinary care' he would be guilty of negligence . . . . and while the court did not say that driving the car on the left side of the road was only *prima facie* negligence, he admonished the jury that only in the event appellant was on the wrong side of the road by reason of failure to 'exercise ordinary care' would he be liable. (*Mooney v. Canier,* 198 Iowa 251, 197 N. W. 625.)

"While the instruction might have been more clearly and explicitly worded, in the absence of a proper request, and none was made, no prejudicial error appears." (Emphasis inserted.)

■■ While it may be observed that the question of driving on the wrong side of the road in an attempt to avoid impending danger may not be presented in the instant case, the rule announced by the foregoing cases is to the effect that driving upon the wrong side of the road is only *prima facie* negligence and not negligence *per se,* as Instruction No. 20 advised the jury. The prejudicial nature of Instruction No. 20 is made further apparent when it is considered in connection with Instructions No. 24 and 26, hereinafter referred to, which instructions in effect appear to announce an opposite rule insofar as the deceased was concerned, in effect advising the jury that it was Goible's absolute duty to avoid the accident even though deceased was driving on his left-hand or wrong side of the highway. The instructions considered together in effect advise the jury that it was not negligence for deceased to drive upon the wrong side of the

highway, but it was negligence *per se* for Goible to drive upon the wrong side of the highway, irrespective the reason therefor.

Instruction No. 25 recited as follows:

"You are instructed, gentlemen of the jury, that if you find from the evidence that the circumstances attending the approach of the automobile driven by the deceased, Floyd J. Stuart, at the time it was first observed by the driver of defendants' truck, Leroy Goible, were such as to put an ordinarily prudent person upon notice of imminent and impending danger, and if you find from that he had ample time thereafter to have moved his motor truck to the right hand side of the highway or to have stopped said motor truck, and the doing by him of either would have prevented said collision, that then in that event your verdict should be for the plaintiffs."

This instruction appears to have been given upon the theory of imminent and impending danger created by the circumstances attending the approach of the automobile of deceased and then instructs that if the driver of the truck could have stopped or could have moved to the right and either would have prevented the collision, the jury's verdict must be for the plaintiff. In other words, regardless of the negligence, if any, of plaintiff, regardless of what an ordinarily prudent person would have done under like circumstances, and regardless of what a person would have done when confronted with imminent and impending danger such as referred to, the absolute duty to stop or move the truck to the right, if it *could* have been done, was imposed upon the truck driver, which propositions do not appear to be supported by well reasoned cases. In *Quillin v. Colquhoun*, 42 Ida. 522, 247 Pac. 740, this court said:

"It cannot be said that it was the duty of Mrs. Colquhoun to stop or slacken the speed of her car rather than to turn out to avoid the accident. *Mrs. Colquhoun's duty was to avoid the accident if possible in the best manner possible.*"

Instruction No. 25 not only places an absolute duty upon the driver of the truck to do one of two things, or both, if within the realm of possibility, but likewise fails to include the right to avoid the collision by other means, either in the best man-

ner possible, as a reasonably prudent person would have attempted to avoid the collision, or as a person in imminent and impending danger would have attempted to avoid the collision.

"Respondent might have stopped immediately, he might have proceeded along the road in the position he occupied when he first saw appellant's car approaching, he might have turned off the paved highway, as he did, or he might have stopped at some point on the road between the position he occupied when he first saw the other car and the point of impact. But can it be said that reasonable minds might not differ as to the course he should have taken? He had a right to assume, until the contrary appeared, that appellant would be able to control his car and keep on his own side of the road." (*Mast v. Claxton*, 107 Cal. App. 59, 290 Pac. 48.)

■ Under such circumstances whether or not one is guilty of negligence in taking the course he pursued is dependent upon whether or not under the circumstances he acted in a reasonably prudent manner. (*McCoy v. Krengel, supra.*)

■■ While impending and imminent danger were referred to in the Instruction No. 25 the rule with respect thereto was completely ignored.

"In time of imminent danger, a person is not necessarily negligent because he fails to take every precaution or adopt every means of safety that a careful calculation subsequently shows he might have taken or adopted.

"The Supreme Court of this state in the case of *Schneider v. Market Street Railway Co.*, 134 Cal. 482, 66 Pac. 734, 738, said as follows:

" 'If the plaintiff is suddenly put into peril, without having sufficient time to consider all the circumstances, he is excusable for omitting some precautions, or making an unwise choice, under this disturbing influence, although, if his mind had been clear, he ought to have done otherwise. This is especially true if the peril is caused by the defendant's fault.' And of such a case it is said: 'even if, in bewilderment, he runs directly into the very danger which he fears, he is not in fault. The confusion of mind caused by such negligence is part of the injury inflicted by the negligent person.'

"In different language this doctrine has been affirmed and reiterated by the cases in this state continuously since the time of that decision, and the principle has become so strongly the settled law of the state that it cannot be questioned." (*Mast v. Claxton, supra.*)

"The plaintiff William Power was entitled to believe that the driver of the bus would return to the highway after passing the Ford car, and was under no obligation to make any attempt to stop his car until he saw that a collision was imminent. . . . . He was in a position of imminent danger and would not be held to the same degree of care as under ordinary conditions. One in great peril, when immediate action is necessary to avoid it, is not required to exercise all that presence of mind and carefulness which are justly required of a careful and prudent man under ordinary circumstances. *Tousley v. Pacific Electric Ry. Co.*, 166 Cal. 457, 137 Pac. 31. . . . . In *Shupe v. Rodolf*, 185 Cal. 371, 197 Pac. 57, it is said:

" 'But the question in the case is not whether the plaintiff could have turned farther to the right and have avoided the collision, but whether, assuming that he could, his failure to do so was necessarily due to lack of reasonable care to avoid the impending collision. The two things are not the same. It may be that the plaintiff, if he had turned more quickly to the right, might have avoided the collision. It may also be that he could have avoided it by turning to the left. The point is that when the defendants' car started to turn to the left, the plaintiff was confronted with a situation of imminent danger requiring instant action, and there may have been no negligence on his part in taking the action he did, although if he had done something else he would have escaped. As was said in *Karr v. Parks*, 40 Cal. 188, 193, "it would be absurd to hold that even an adult person, in time of imminent danger, is negligent, unless he takes every precaution that a careful calculation afterward will show he might have taken." ' " (*Power v. Crown Stage Co.*, 82 Cal. App. 660, 256 Pac. 457.)

Instructions numbered 24 and 26, when considered in connection with the evidence to which they apparently were intended to refer, again announce the absolute duty

upon the part of the truck driver to avoid the accident. These instructions recite as follows:

Instruction 24:

"if you find from the evidence that Leroy Goible, the driver of defendants' truck, immediately prior to the collision in question was driving his truck upon the right side of the highway, and that immediately prior to such collision he turned to his left driving his truck on to said highway in the belief that his said truck had cleared the approaching car, driven by deceased, Floyd J. Stuart, and if you further find that as a result of his driving his said truck back on to the oiled or hard surfaced cushion of said highway, the collision in question occurred and that such driving of said truck back on to the said hard surfaced portion of said highway was the proximate cause of the collision, as proximate cause is defined in these instructions, then and in such event your verdict should be for the plaintiffs."

Instruction 26, in part:

"and if you find that had he not driven the said motor truck back on to the oiled surface of said highway, if you find such to be the fact, the collision complained of would not have occurred, then and in such event your verdict should be in favor of the plaintiffs."

It is to be recalled to mind that there was evidence without conflict that the oiled or hard surfaced portion of the highway was 18 feet wide, one-half of which would be nine feet, and that the extreme width of the truck (the bed which extended 20 inches from the cab), was 7 feet 11 inches. It also appeared that six steps from the point where the broken glass was found the truck had traveled with its right wheels six to eight inches off of the oiled surface of the highway on the graveled shoulder to the truck's right and that at the point of impact the wheel tracks again came back onto the oiled portion of the highway. There was testimony that the driver, Goible, in meeting the deceased drove his truck off the highway for a distance, running on the graveled shoulder, and believing he was past pulled back onto the highway. These instructions not only ignore the question of what a reasonably prudent person would have done under the circum-

stances, but instructed the jury without qualification that if the driver of the truck came back onto the oiled portion of the highway before completely avoiding the deceased's car plaintiff was entitled to recover. From the distances positively related it is apparent that the driver of the truck might have pulled back onto the oiled surface of the highway and still have kept his truck entirely within the confines of his right-hand side of the highway. By these instructions the jury was advised that even though the deceased was traveling on Goible's side of the highway, and Goible was traveling on his own side of the highway but without his right wheels off the hard surface of the road, plaintiff was entitled to recover. These instructions were most prejudicial to appellants under the evidence. It could not be said as a matter of law that if the truck driver did not continue to drive off the oiled portion of the road respondents must recover.

"Respondent's car, even though not driven on the extreme outside of the curve, might still have been wholly to respondent's right of the center line of the roadway." (*Van Cello v. Park,* 157 Wash. 321, 289 Pac. 19; *Parsons v. Clark,* 157 Wash. 697, 289 Pac. 22.)

It is quite apparent from a careful study of the instructions given that the court adopted respondents' theory of the case but did not adopt the theory of appellants and did not place upon each of the parties like care and caution in the operation of their respective motor vehicles. We have examined all of the instructions and we are unable to agree with counsels' contention that the instructions above referred to are not prejudicial when construed with other instructions or when the instructions are considered and construed as a whole.

Appellants assign as error the refusal of the court to permit them to prove, and in denying their offer to prove by a witness, that he was well acquainted with deceased, that it was deceased's habit to visit the witness' place of business quite often and that on the afternoon of the day the collision occurred deceased was in the witness' place of business several times, that he then noticed the deceased was very much intoxicated, and that within a short time before

closing, 6 o'clock in the evening, the witness and deceased visited a beer parlor and had some beer. Respondents urge, and cite two authorities to the proposition, that evidence tending to establish intoxication at a time when it would have been reasonably anticipated that intoxication would have passed off, is inadmissible. In *Johns v. Mecchi*, 116 Cal. App. 31, 2 Pac. (2d) 452, cited by respondents, the evidence disclosed that the accident occurred at 3 o'clock in the morning and that the night before, between 8 and 11 o'clock, the defendant had four drinks, and the court said:

"At the time of the accident it does not appear that he was under the influence of intoxicating liquor. We may not say that the jury erred when it declined to find to the contrary."

In *Illinois Cent. R. Co. v. McGuire's Admr.*, 239 Ky. 1, 38 S. W. (2d) 913, cited by respondents, it is said:

"Certainly it would have been competent to have shown that McGuire was under the influence of intoxicating liquors at the time of the accident, and it would not have been improper to show that he was intoxicated at a time previous to the accident if it may have been reasonably anticipated that the intoxication would not have passed off before the accident, but to show that he was intoxicated on the night previous to the accident was no proof that he was intoxicated at the time of the accident."

The evidence sought to be elicited in the instant case referred to a period of time during the afternoon and up until about 6 o'clock in the evening on the day of the collision, a period ending about three hours previous to the collision. There would seem to be no room for argument that evidence of the drinking of intoxicating liquors and the condition of a person with reference to intoxication is admissible upon the question of intoxication, if such evidence is not too remote in point of time, the fact of remoteness in point of time going rather to the weight of the evidence, than to its admissibility, and evidence remote in point of time to the extent of 8 to 10 hours has been held properly admissible. (*Com. v. Cress*, 81 Pa. Super. Ct. 519; *Nail v. State*, 33 Okl. Cr. 100, 242 Pac. 270; *McDaniel v. State*, 105 Tex. Cr. 468, 288 S. W. 1081; *Com. v. Durkin*, 257 Mass. 426, 154 N. E.

185; *People v. Dryden,* 76 Cal. App. 525, 245 Pac. 436; *State v. Fahey,* 201 Iowa, 575, 207 N. W. 608; *State v. Griffith,* 320 Mo. 288, 6 S. W. (2d) 866; *State v. Tinsley,* 34 N. M. 458, 283 Pac. 907; *Com. v. Dale,* 264 Mass. 535, 163 N. E. 158; *State v. Wester,* (Mo.) 18 S. W. (2d) 28.) The evidence sought to be elicited was admissible, not appearing to be too remote.

No useful purpose would be served by considering the remaining assignments of error inasmuch as the judgment must be reversed and a new trial granted.

The judgment is reversed and the cause remanded with instructions to grant a new trial. Costs awarded to appellants.

Ailshie, C. J., and Givens, J., concur.

MORGAN, J., Concurring.—My concurrence is based on the rulings excluding testimony tending to show Stuart was intoxicated.

Holden, J., dissents.