WATKINS v. UTAH POULTRY &
FARMERS COOPERATIVE.

No. 7774.   Decided December 15, 1952.   (251 P. 2d 663.)

460

*Woodrow D. White,* Salt Lake City, for appellant.

*Stewart, Cannon & Hanson, Ernest F. Baldwin, Jr., Don J. Hanson, Rex J. Hanson* and *Irwin Clawson,* Salt Lake City, for respondent.

CROCKETT, Justice.

Plaintiff's car and defendant's truck sideswiped each other at a bridge which somewhat narrows the highway. Plaintiff, Howard E. Watkins, suffered a brain concussion; his left leg was badly mangled and his left arm was almost torn off and left hanging by a ribbon of muscle. Amputation of the arm above the elbow and of the leg above the knee was required. Despite these awful injuries, a jury returned a verdict of no cause of action against the plaintiff. From this adverse judgment and denial of his motion for new trial, plaintiff appeals.

His principal assignments of error center around allowing evidence of his intoxication and the submission of that issue to the jury. Concerning this matter he maintains (a) that there was insufficient evidence to show intoxication, (b) that in any event, intoxication could not have proximately contributed to cause the collision and (c) that

the purpose and result of much of the evidence concerning his intoxication was to inflame and prejudice the jury against him.

The jury having found for the defendant, we are required to take the evidence and all fair inferences arising therefrom in the light most favorable to it.[1] This collision occurred at about 9:30 p. m. July 20, 1950, at what is called Buckhorn Flat, about 32 miles north of Cedar City. Plaintiff was driving his 1949 Ford sedan northward on the highway, U. S. 91, which is surfaced with blacktop, about 20 feet wide, referred to as a two-lane highway although there is no marked center line; defendant's feed truck was being driven in the opposite direction, that is south, by LaMar W. Matheson, and Glen Garfield was riding with him. Though he was unable to recall other events preceding and following the accident, plaintiff testified that he remembered seeing the truck coming south toward him on the highway, its lights overlapping the center by a distance which he said

"* * * could be two, * * * could be three, * * * could be four feet."

He stated that he drove on the shoulder of his side of the road for a ways until he saw the abutment of a highway bridge loom up so that his only alternatives were of hitting the bridge, of turning right off the highway into a large gully, or of turning toward the oncoming truck in an effort to go between it and the bridge abutment, which is what he says he did. He related that he only touched his brakes before the crash because there was neither time nor space in which to come to a stop.

Plaintiff's car completely cleared the front end of the truck but collided with the left front corner of the truck bed, which sideswiped the full length of his car, ripping it open down almost the entire length of the driver's side.

---

[1] *Toomer's Estate* v. *Union Pac. R. Co.*, 121 Utah 37, 239 P. 2d 163.

The truck bed was scarred a bit on the left front corner and pushed back a little, but was not otherwise damaged appreciably.

Neither Matheson, defendant's truck driver, nor his passenger were injured; each testified that the truck was driven on its own side of the road, as far to the right as possible without the wheels being off the pavement, both immediately before and after the crash; that the plaintiff's car approached them at a very rapid rate of speed. Matheson said that just a moment before the crash the plaintiff's car came over toward him, that is, over on to the defendant's or west side of the highway.

There were tire burns identified as having been made by plaintiff's Ford on his side of the road, but they were in line with fresh gouges in the highway on defendant's side south of the tire burns. The first of these was two feet west from the center of the road; likewise raspberries, which had been knocked from the left side of defendant's truck and splattered about the highway, were thickest on the defendant's, or west side of the road. The investigating officers' evidence shows the middle of this smear of raspberries was about two feet west of the middle of the highway.

It is obvious that these two vehicles could not each have been traveling on its own side of the road as the litigants respectively contend. The defendant's truck was eight feet wide (lacking two inches). Allowing for its overhang, if its wheels were on the west edge of the blacktop, as its occupants testified, only about seven feet of its width would have been on the highway, leaving it three feet west of the center of the road. Though the evidence is in conflict, it is clearly such as would support a finding by the jury that the defendant's truck kept on its side of the highway and that the plaintiff's car did not.

Respecting the matter of intoxication: Plaintiff contends that the only real evidence thereof was the odor of alcohol

on his breath. (No blood nor other tests were taken.) The evidence concerning this matter, referring to some time both before and after the collision, shows his contention is not correct. The evidence admitted was competent, material and persuasive, and there was a great deal of it. To avoid prolixity we abstract illustrative portions:

About 5 p. m., Mr. Jack Scott, store proprietor:

"[Watkins] * * * was intoxicated, very much so; * * * His eyes were quite bloodshot, his tongue was thick, his conversation was a gablous [sic] character, and he could hardly hold himself up."

5:30 to 6:00 p. m., Mr. Robert Tuckett, bakery operator: plaintiff was "very unsteady and that his face was flushed, his eyes glassy;" he approached Mr. Tuckett and others, greeted him with the remark "Hi stupid"; plaintiff staggered to his car, stuck a .22 rifle out the window, pulled the bolt back aiming it at them; they left, but quickly.

6:30 p. m., Mr. Kent T. Farnsworth, operator of Ted's Bar: plaintiff ordered a beer.

"He tipped it over, * * * was unruly, wanted to pick fights with other customers * * * and finally it was necessary for me to escort him out."

8:00 to 8:30 p. m., Orissa Hirschi, bartender at Milt's Circus Lounge: plaintiff came in, he was too drunk, she refused to serve him.

Around 8:30 p. m., Officer William M. Hills: picked up plaintiff, who appeared to be under the influence of alcohol; he told him he couldn't drive his car. On plaintiff's insistence that a friend would drive him to St. George, Officer Hills, without checking the story, decided to give plaintiff a "break" and put him in his car, the folly of which is now too tragically apparent.

10:30 p. m., Ernest Pearce, State Highway patrolman: When he arrived about an hour after the accident, plaintiff

was on the seat of his car "profaning in a belligerent state of mind"; in his opinion plaintiff was intoxicated.

About 11:30 p. m., Dr. L. V. Broadbent and his nurse: treated plaintiff at Iron County Hospital; plaintiff was belligerent and abusive. Although admitting plaintiff had a brain concussion and had been drugged, the doctor was of the opinion that plaintiff was intoxicated.

Since driving an automobile under the influence of alcohol is an element of negligence important to be considered, evidence concerning Watkins' intoxication was admissible if such evidence was not too remote in time from the accident.[2] This evidence extending from about 5:30 p. m. to about 8:30 p. m. (about an hour before the accident) and commencing about an hour after it at 10:30 p. m. to as late as 11:30, was all sufficiently close in time to have a definite bearing on his condition when the accident occurred.

Plaintiff complains that this evidence as presented by the defendant "was calculated to inflame and confuse the jury, and stifle their minds with prejudice and hatred toward him." He singles out particularly the testimony of Dr. Broadbent and his nurse concerning his profane and uncooperative attitude and his threatening gestures with the .22 rifle as being of such nature. It is certainly true that such evidence, if believed, would not, to put it mildly, have led the jury to a very flattering appraisal of the plaintiff's demeanor, and perhaps even his character. Also, there was enough of it, both from the witnesses above referred to, and others, that it may have been cumulative if the trial court should have so regarded it.

Plaintiff correctly points out that evidence which is merely cumulative or which tends to prove facts not con-

---

[2]*Stuart* v. *McVey*, 59 Idaho 740, 87 P. 2d 446; *Callahan* v. *Prewitt*, 143 Neb. 793, 13 N. W. 2d 660; *Maier* v. *Minidoka County Motor Co.*, 61 Idaho 642, 105 P. 2d 1076.

troverted may be excluded, and the court should do so where if admitted its only purpose would be to prejudice and mislead the jury.[3] However, there was an issue as to intoxication; plaintiff denied and still denies it. Part of this evidence was apparently calculated to prove not only intoxication, but the degree thereof earlier in the evening, which would have probative value as to whether it would have worn off by the time the collision occurred. It would be difficult for a court to limit the proof of intoxication by saying in effect to the proponent of the issue, that you can prove that he was so drunk and no drunker and after some certain degree of intoxication had been established, refuse to permit further evidence concerning it. The testimony here refers to conduct, statements and reactions of the plaintiff which form an objective indication of his condition from which the jury could determine the degree and the duration of his intoxication. Defendant cannot be deprived of the use of this material evidence merely because it might have a tendency to prejudice plaintiff in the eyes of the jury.[4] This principle was ruled upon in the case of *Bennett* v. *D. & R. G. Western Railroad Co.*[5] where complaint was made

"of such incidents as exhibiting the impaired member [the stump of an amputated arm], a dramatic demonstration of the difficulty of respondent in obtaining a wallet from his pocket  *  *  *."

because it was claimed that the only purpose of such evidence was to inflame the passions of the jury, the fact of the loss of the arm having been admitted. It was held that the evidence was for the purpose of proving facts material to be considered by the jury and was therefore competent.

· Again in *State* v. *Woods*,[6] although a criminal case, the same principle was approved. It was contended that the

[3]31 C. J. S., Evidence, § 166, page 877.
[4]31 C. J. S., Evidence, § 186, page 907.
[5]117 Utah 57, 213 P. 2d 325, 329.
[6]62 Utah 397, 220 P. 215, 220.

purpose of presenting a photograph showing the blackened walls and burned bed, bedclothes and charred body of the defendant's wife taken shortly after discovery of her murder, was to arouse and inflame the passions of the jury. This court held:

"The photograph * * * was not inadmissible, though it was only a repetition of what had been described verbally by the physician and by the officers; it may not have conveyed any information which had not already been given to the jury, but that would not be a reason for its exclusion."

Plaintiff argues that he made the best choice available to him under the circumstances and therefore intoxication could not have proximately contributed to cause the collision. His theory is that as he observed the approaching truck it was crowding over onto his side of the road, and the best thing for him to do was to try to squeeze between it and the bridge abutment, rather than to hit the bridge or turn off into the gully. His hypothesis is based upon his own interpretation of his evidence which the jury was not bound to follow.

We do not disagree with plaintiff's statement that intoxication in and of itself would not be a proximate cause of an accident; e. g., one could be ever so drunk just sitting in his car, without causing any damage; the same may be true if the car was driven very slowly where ■ there were no obstructions or traffic, or out in some wide open space such as a desert or the salt flats. But it is the result of drunkenness in impairing the ability to use due care in the operation of the automobile which becomes the proximate cause of a collision. Intoxication materially detracts from the efficiency of the brain, nervous system and bodily functions dependent on them, hinders muscular coordination, lengthens reaction time, and prevents accuracy of judgment of distance, space and speed. If the jury found Watkins was driving his car while drunk, as the evidence leaves little .doubt that he was, it may have crippled his

normal abilities so that he couldn't use due care, that is, rendered him unable to judge the various distances, the respective speeds of the cars, the space between the truck and the bridge abutment, his own position as related to the center of the highway and those objects; and furthermore, his reactions to the situation he confronted and his ability to properly operate and guide his car all would be limited by his intoxication which thus could have been a direct and proximate cause of the collision. Therefore, the matter of his intoxication, both as to his negligence and as a proximate cause of the collision, was properly submitted to the jury.[7]

Plaintiff further complains that the court refused to accord him his right to have the case submitted to the jury upon his theory of the evidence.[8] In his request number three, he asked that the jury be told that if they found that intoxication was not a proximate or contributing cause of the accident, they should disregard the evidence of intoxication. While the court did not give this instruction as requested, such was the effect of the instructions given. Instruction number five informed the jury that if they found from a preponderance of the evidence that the plaintiff immediately before and at the time of the accident was under the influence of intoxicating liquor, that he was negligent, and that if they further found that his condition was the sole or a proximate contributing cause of the collision, that he could not recover. The effect of this instruction, taken in connection with others given, was that the plaintiff would not be precluded from recovery because of intoxication unless the jury found both that he was driving while drunk and that it resulted in proximately causing or contributing to cause the collision.

---

[7]*Emery* v. *Los Angeles Ry. Corp.*, 61 Cal. App. 2d 455, 143 P. 2d 112.

[8]*Morgan* v. *Bingham Stage Lines Co.*, 75 Utah 87, 283 P. 160; *Hartley* v. *Salt Lake City*, 41 Utah 121, 124 P. 522.

This did in fact present plaintiff's theory, which is what he was entitled to.[9]

By his requested instruction number six, plaintiff asked the court to tell the jury that as the vehicles approached each other, if the plaintiff in the exercise ■ of reasonable care, turned to avoid striking the bridge or the wash and that the defendant either saw or should have seen him do so and

*"had a reasonable opportunity thereafter* \* \* \* *to avoid colliding with the plaintiff's automobile* by turning to the right \* \* \*, and that the defendant failed to avail himself of such opportunity"

proximately causing the accident, they should find against the defendant, unless they also found contributory negligence.

Under the facts, there are just two possible situations to which the above request could reasonably be considered to apply. The first would be under the assumption that the plaintiff was keeping on his own side of the road. That circumstance is adequately covered by other instructions advising the jury of the defendant's duty to travel on its own side of the road and that failure to do so would be negligence, which, coupled with proximate cause, would permit plaintiff to recover. The other would be under the assumption that the plaintiff came over onto the wrong side of the road, and the plaintiff wanted the court to tell the jury that even though he crossed over onto the wrong side of the highway, he could nevertheless recover if the defendant saw or should have seen him and thereafter in the exercise of reasonable care he had a "clear chance" to avoid the collision. This contention is answered by the analysis of "last clear chance" as contained in the case of *Compton* v. *Ogden Union Railway and Depot Company*,[10]

[9]*Miller* v. *Utah Consolidated Mining Co.*, 53 Utah 366, 178 P. 771; *Toone* v. *J. O. O'Neill Construction Co.*, 40 Utah 265, 121 P. 10.
[10]120 Utah 453, 235 P. 2d 515.

where we approved the doctrine as set forth in sections 479 and 480 of the Restatement of Torts. In the instant case, the plaintiff's negligence would not have come to rest, and defendant's driver could not possibly have been aware that plaintiff was inattentive; so at best, even under plaintiff's theory and taking his interpretation of the evidence, we would have had the concurring negligence of the plaintiff and defendant resulting in the collision, under which circumstances there could be no recovery.[11]

Thus our conclusion is that if such instruction contemplated non-negligence on the part of the plaintiff, then the other instructions, as above discussed, would adequately cover the rights and duties of the parties; if it contemplated negligence on the part of the plaintiff, it was a request to submit the case on the theory of "last clear chance" which would not have been properly applicable to the circumstances here.

It gives no pleasure to set forth herein the somewhat unsavory details about plaintiff's conduct but that has been done only to the extent deemed necessary to adequately deal with the attacks he makes upon the proceedings and the judgment.

The frightful injuries suffered by plaintiff naturally inspire extreme sympathy for him. However great this may be, it is not the prerogative of the jury, the trial court nor of this court to require someone else to compensate him merely because of compassion in his behalf. He was afforded what the law entitles him to, a jury trial. In the absence of any showing of error which prevented him from having a full and fair presentation of his case and determination of the issues, the verdict must stand.

Judgment affirmed; costs to defendant (respondent).

WADE and McDONOUGH, JJ., concur.

---

[11]*Oswald* v. *Utah Light & Ry. Co.*, 39 Utah 245, 117 P. 46.

WOLFE, Chief Justice.

I concur except that I do not think the plaintiff by his requested instruction No. 6 intended to interject "last clear chance" into the case, as Mr. Justice CROCKETT suggests. That requested instruction directs the jury to find for the plaintiff if they find certain evidence to be true, unless they "also find that the plaintiff was guilty of contributory negligence". Had the plaintiff intended that requested instruction No. 6 embrace "last clear chance", he would not have desired that the jury be instructed to find for the defendant if they found contributory negligence inasmuch as under the last clear chance doctrine a plaintiff may recover despite his contributory negligence.

HENRIOD, Justice.

I concur, but respectfully suggest that plaintiff's physical misfortune is painful enough without adding thereto an element of mental pain and suffering—sure to follow our documentation in a public, printed opinion, for all to see, certain details, possibly gossip, implying that the plaintiff is a drunk. In the opinion of the writer, such documentation is quite unnecessary in deciding this case, and in the interest of charity might be omitted.